UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
:
LINK MOTION INC.,                                         :
:
         Plaintiff,                                  :
:
  -against-                                              :   No. 22-cv-8313
:
DLA PIPER LLP (US) and CARYN G.                           :
SCHECHTMAN,                                               :
:
         Defendants.                                 :
:
----------------------------------------------------------x

### DEFENDANTS DLA PIPER LLP (US) AND
### CARYN G. SCHECHTMAN'S NOTICE OF REMOVAL

    Defendants DLA Piper LLP (US) ("DLA") and Caryn G. Schechtman (collectively, "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446. Defendants state as follows:

### THE REMOVED ACTION

    1.    On September 12, 2022, Plaintiff Link Motion filed a Summons and Complaint and Demand for Jury Trial in the Supreme Court of the State of New York, New York County (Index No. 653322/2022) (the "NYS Action"). The Summons and Complaint is attached hereto as Exhibit A ("Compl."), pursuant to 28 U.S.C. § 1446(a). Defendant Schechtman has not been served with the Summons or Complaint, nor any other process, pleadings or orders. Defendant DLA was served with the Summons and Complaint, via its appointed agent in New York, on September 21, 2022.

    2.    The NYS Action purports to be a New York legal malpractice action that arises out of the federal securities action captioned *Baliga v. Link Motion, Inc.*, Case No. 1:18-cv-11642 (S.D.N.Y.), which has been pending before the Hon. Victor Marrero of the U.S. District

Court for the Southern District of New York since December 2018 (the "Securities Action"). In the NYS Action, Link Motion, Inc. ("Link Motion") asserts that Defendants failed to defend Link Motion in the Securities Action against securities claims arising under Section 10(b) of the Securities and Exchange Act of 1934, including by allegedly failing to discover that Plaintiff Wayne Baliga ("Baliga") "lacked standing" to assert his claims under Federal Rule of Civil Procedure 23.1 because he was a holder of American Depository Shares and "not a registered shareholder," as well as for allegedly "failing to recognize that [the] securities claims otherwise failed to support [a] request for [] Provisional Equitable Relief," including the appointment of a receiver, in the Securities Action. Ex. A, NYS Action Compl. ¶¶ 1, 4, 26–70, 78.

## GROUNDS FOR REMOVAL

3.   This Court has original federal question jurisdiction under 28 U.S.C. § 1331. Suits alleging state law causes of action "arise under" federal law if the "state-law claim necessarily raise(s) a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Here, this Court has jurisdiction because the NYS Action "necessarily raise[s]" numerous substantial and disputed federal issues on the face of the complaint. *Id.*

4.   Further, this Court has "supplemental jurisdiction over the malpractice claim [under 28 U.S.C. § 1367(a)] because it has original jurisdiction over the underlying securities claims" in the Securities Action. *Achtman v. Kirby, McInerney Squire*, 464 F.3d 328, 334-35 (2d Cir. 2006) (affirming supplemental jurisdiction over malpractice claim alleged in separate action).

## THE NYS ACTION "NECESSARILY RAISE[S]" FEDERAL ISSUES

5. In the Securities Action, Baliga originally sued Link Motion and three of its officers and/or directors, asserting derivative causes of action for, among other things, violation of Section 10(b) of the Exchange Act and Rule 10b-5. Securities Action Dkt No. 1. He alleged acts of gross mismanagement and acts of self-dealing, materially misleading and false statements and omissions to the investing public, and outright fraud and theft of company assets. *Id.* Baliga immediately sought preliminary injunctive relief and the appointment of a receiver to prevent further dissipation of Link Motion's assets, to claw back assets that were wrongfully transferred out of the Company, and to restore value to the Company and its shareholders.

6. After Link Motion declined to oppose Baliga's request for preliminary injunctive relief, the Court entered a preliminary injunction and appointed a temporary Receiver. Securities Action Dkt No. 26 (the "Receivership Order"). Under the Receivership Order, the Receiver was granted broad authority, among other things, to take "any acts to protect the status quo of the Company, to prevent waste, dissipation or theft of assets, . . . [and] assume full control of the Company." *Id.* at § II.1-3. Those powers included preventing "any director, officer, employee, independent contractor, or agent of the Company, including any Individual Defendant, from control of, management of, or participation in, the affairs of the Company," commencing and controlling "any action" brought "in the name of the Company," and maintaining control over Link Motion's attorney-client privileges. *Id*. at § II.2(b), (e). The Baliga Defendants were directed not to "interfere with the Receiver's performance of his duties under this Order." *Id*. § II.4.

7. A purported shareholder of Link Motion—China AI Capital Limited ("China AI")—previously made a demand on the Receiver to bring a direct claim against Defendants that is nearly identical to the NYS Action. The Receiver declined to assert a claim against

Defendants on behalf of the Company, yet China AI nevertheless thereafter brought the claim on a derivative basis in this Court, in the case captioned *China AI Capital Limited v. DLA Piper LLP (US), et al.*, No. 21-cv-10911 (S.D.N.Y.) (the "China AI Action"); *see also* Ex. A, NYS Action Compl. ¶ 72 (". . . the Receiver refused multiple times while he was in control of the Company to assert the Company's legal malpractice claim against Defendants."). China AI acknowledged in the China AI Action that "[b]ecause the Receiver has not yet been discharged, the Board of Directors of the Company has no authority to decide to take legal action on behalf of the Company." China AI Action Dkt No. 1 ¶ 100. Counsel for China AI also represents Defendant Dr. Vincent Shi, Link Motion's former chairman, in the Securities Litigation.

8. Both the Securities Action and the China AI Action are currently still pending before this Court, and the Receiver has not been discharged from his duties in control of the Company. Nevertheless, and notwithstanding the fact that the Receiver—who declined to bring a direct action against Defendants on behalf of Link Motion—remains in place and in control of Link Motion, a faction of Link Motion's Board of Directors purportedly met in secret in China to orchestrate a purported direct claim by Link Motion against DLA. That faction retained China AI's and Dr. Shi's counsel to file suit against Defendants in New York Supreme Court, this time purportedly on behalf of Link Motion directly. The Court ordered the parties and the Receiver in both the China AI Action and the Securities Action to submit letter briefs addressing whether and to what extent the filing of the NYS Action, purportedly at the behest of this subset of the Company's Board of Directors, constitutes a violation of the Court's Orders in the Securities Action. *See* China AI Dkt Nos. 29, 32, 33; Securities Action Dkt Nos. 338, 350, 352, 353. The Receiver's position, with which Defendants and Baliga agree, is that the secret meeting was a violation of multiple Court orders; that the Receiver has displaced the Company's Board of

Directors until such time as the Receivership is discharged; and until that discharge is effective, the Company's Board of Directors lacks the authority to act.  *Id.*  The Court's decision on the matter is currently pending.

9. In the NYS Action, Link Motion alleges Defendants did not recognize that Baliga, the plaintiff in the Securities Action, "failed to state all the elements of causes of action under the Securities and Exchange Act of 1934." Ex. A, NYS Action Compl. ¶¶ 31, 78.  Link Motion also alleges that Defendants failed to recognize defects in the Securities Action, including that Baliga "lacked standing under Rule 23.1 of the Federal Rules of Civil Procedure," and that Baliga "lacked standing to assert derivative claims under Cayman Islands law." Comp. ¶ 78.  Link Motion further alleges that Defendants "fail[ed] to advise the federal court [in the Securities Action] that the Company had meritorious defenses against Baliga's request for [] appointment of [a] receiver under Article VIII of the Federal Rules of Civil Procedure," and "failed to request adequate security pursuant to Rule 65(c) [of the Federal Rules of Civil Procedure]." Compl. ¶¶ 58, 62, 78.

10. Significant for purposes of this removal petition, Link Motion contends that had DLA recognized the defects in Baliga's securities claims, or his purported lack of standing under the Federal Rules of Civil Procedure, Judge Marrero supposedly would not have entered the Receivership Order.  Compl. ¶¶ 67-68.  Among the damages that Link Motion claims from its allegations about what Judge Marrero would have done are the costs and expenses associated with the Receivership, which likewise were reviewed and approved by Judge Marrero and thus are called into question by Link Motion in the NYS Action.  *Id.* ¶ 69.

11. Further, to establish its legal malpractice claim, Link Motion "will be required to prove—in order to demonstrate causation [against DLA]—that it did not violate the Federal

securities laws," *Reserve Mgm't Co. v. Willkie Farr & Gallagher LLP*, 2012 WL 4378058, at *5 (S.D.N.Y. Sept. 25, 2012), and that Baliga's federal securities claims were deficient as a matter of law.  Link Motion thus must prove in the NYS Action that, "but for" DLA's alleged conduct, it would have successfully persuaded Judge Marrero in the Securities Action, for example, that "Baliga lacked standing under Rule 23.1 of the Federal Rules of Civil Procedure," that Baliga "failed to state causes of action for violation of the federal securities laws," and that "Baliga's securities claims . . . failed to support his request" for a receivership—and thus that Judge Marrero "would not have granted the Provisional Equitable Relief."  Compl. ¶¶ 78, 82.  Relatedly, Link Motion will need to prove that Judge Marrero would not have appointed the Receiver nor approved any of the Receiver's fees and costs.

12.   "[G]iven the comprehensive federal securities regime, and the fact that Congress has granted federal courts exclusive jurisdiction over federal securities law actions, there is a strong federal interest in the federal securities law issues raised in [Link Motion's NYS Action] malpractice complaint."  *Willkie Farr*, 2012 WL 4378058, at *6.

13.   Link Motion's causation theory in the underlying NYS Action also implicates the authority of the Receiver, serving as this Court's agent in connection with the Securities Action, to have taken the actions that Link Motion now challenges as harmful to the Company.  Federal courts have a substantial interest in actions involving their receiverships.  *See, e.g.*, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Devel. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (noting "the primacy of federal law in the practice of federal receiverships"); *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, 2020 WL 1157650, at *4 (N.D.N.Y. Mar. 10, 2020) ("Federal law alone governs a federal receivership."); *see also Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009) ("Not only does [Federal] Rule 66 require application of the federal

rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance with the historical practice in federal courts.").

14. Further, Judge Marrero recently rejected some of the same arguments Link Motion now alleges as part of its malpractice claim that DLA should have raised. *See Baliga v. Link Motion Inc.*, 2022 WL 3699339, at *5 (S.D.N.Y. Aug. 25, 2022) (adopting Report and Recommendation finding that Baliga had standing to assert federal securities claims and that the Order appointing the Receiver was not void *ab initio*). As such, Link Motion's claim and Defendants' defenses thereto will necessarily include the rulings and Orders of Judge Marrero in the Securities Action.

## SUPPLEMENTAL JURISDICTION EXISTS AS WELL

15. As in *Achtman*, the "facts underlying the present malpractice claims and the underlying securities claims 'substantially overlap,' creating a common nucleus of operative fact." 464 F.3d at 336. This Court is "thus well-placed to consider the issues that would arise in the malpractice action," including "whether [DLA] asserted all appropriate [defenses]," *id.*, and whether, as Link Motion alleges, this Court "would not have granted the Provisional Equitable Relief" and appointed a receiver in the Securities Action and suffered all of the supposed damages resulting from the actions taken by the Receiver as an agent of this Court and pursuant to the Orders of Judge Marrero, Ex. A, NYS Compl. ¶¶ 4-6, 60-62, 67-69, 79-82.

## REMOVAL TO THIS DISTRICT IS PROPER

16. Removal to this District is proper because the Supreme Court of the State of New York, County of New York, where the underlying state action was filed, is within the Southern District of New York. *See* 28 U.S.C. §§ 112(b), 1441, 1446(a).

## UPON REMOVAL, THE NYS ACTION SHOULD BE DESIGNATED "RELATED" TO THE SECURITIES ACTION AND ASSIGNED TO JUDGE MARRERO

17. Upon removal, given the substantial overlap in the issues presented in the two actions, the NYS Action should be designated "related" to the Securities Action and assigned to Judge Marrero "in order to avoid unnecessary duplication of judicial effort." Local Civil R. 1.6.

## DEFENDANTS WILL COMPLY WITH THE WRITTEN NOTICE REQUIREMENT

18. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of this Notice of Removal to Plaintiff's counsel of record and will file a copy of this Notice of Removal with the clerk of the state court in which the state court action is pending.

## ALL DEFENDANTS CONSENT TO REMOVAL

19. 28 U.S.C. § 1446(b)(2)(A) requires all defendants who were properly joined and served to consent to removal. Here, based on all available information, only Defendant DLA has been served. Nevertheless, all Defendants, through their undersigned counsel, hereby join in and consent to the removal of the action.

## RESERVATION OF RIGHTS

20. By filing this Notice of Removal, Defendants do not waive, and expressly reserve, any rights, claims, actions, defenses, arguments, or set-offs to which they are or may be entitled in law or at equity, including any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure. Defendants do not concede that Plaintiff has pleaded any claim upon which relief may be granted or that any supposed fact that is alleged is true—virtually all are false. Defendants reserve the right to amend or supplement this Notice as may be appropriate.

Wherefore, pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446, Defendants hereby remove the NYS Action to the United States District Court for the Southern District of New York and respectfully request that the NYS Action be designated "related" to the Securities

Action and assigned to the Hon. Victor Marrero pursuant to Local Civil Rule 1.6. Defendants respectfully request that the Court enter such orders and grant such other and further relief as may be necessary to effectuate the removal.

Dated: New York, New York
September 29, 2022

        GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Nancy Hart*
Nancy Hart

200 Park Avenue, 49th Floor
New York, NY  10166-0193
Telephone:  (212) 351-4000
NHart@gibsondunn.com

*Attorneys for Defendants DLA Piper LLP (US) and Caryn S. Schechtman*