**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

LINK MOTION INC.,

                    Plaintiff,

          -against-

DLA PIPER LLP (US), and CARYN G.
SCHECHTMAN,

                    Defendants.

Index No.: _____

**Summons**

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action
and serve a copy of your answer, or if the complaint is not served with this summons,
to serve a notice of appearance, on Plaintiff's attorney within twenty (20) days after
the service of this summons (not counting the day of service itself), or within thirty
(30) days after service is complete if this summons is not personally delivered to you
within the State of New York; and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: New York, New York
          September 12, 2022

FELICELLO LAW P.C.

By: ___/s/ Michael James Maloney___
          Michael James Maloney
          Rosanne E. Felicello
          Kristie M. Blase
     366 Madison Avenue, 3rd Fl.
     New York, NY 10017
     (212) 584-7806
     mmaloney@felicellolaw.com

rosanne@felicellolaw.com
kristie@felicellolaw.com

*Attorneys for Plaintiff Link Motion Inc.*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LINK MOTION INC.,

                Plaintiff,

        -against-

DLA PIPER LLP (US), and CARYN G.
SCHECHTMAN,

                Defendants.

Index No.: _____

**COMPLAINT**

Plaintiff Link Motion Inc. ("Plaintiff" or the "Company"), by its undersigned attorneys, brings this complaint against Defendants DLA Piper LLP (US) ("DLA") and Caryn G. Schechtman ("Schechtman" and together with DLA, the "Defendants") and alleges as follows.

## NATURE OF THE ACTION

1.    This is an action for legal malpractice. Defendants represented the Company in a shareholder derivative action captioned *Baliga v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642 (S.D.N.Y.) (the "Derivative Action"), filed in the U.S. District Court for the Southern District of New York in December 2018.

2.    Despite there being good grounds to do so, Defendants failed to oppose an application by the plaintiff in the Derivative Action, Wayne Baliga ("Baliga"), for a temporary restraining order, preliminary injunction, and appointment of Robert W. Seiden as receiver for the Company (the foregoing remedies are referred to as the "Provisional Equitable Relief"). Defendants failed to even request that Baliga or

Mr. Seiden post security for the Provisional Equitable Relief despite the fact that such security is required by Rule 65(c) of the Federal Rules of Civil Procedure.

3.     Defendants' failures constitute legal malpractice because Defendants knew or should have known that the Company had meritorious defenses against Baliga's application for Provisional Equitable Relief but failed to assert them.

4.     Defendants knew that Baliga was not a registered shareholder and lacked standing to assert common law claims derivatively on behalf of the Company. Defendants also knew or should have known that Baliga's derivative complaint (the "Derivative Complaint") failed to state all of the elements of a securities fraud claim under Section 10(b) of the Securities and Exchange Act of 1934 and suffered from other defects. Defendants did not inform the Company – their client – that Baliga lacked standing or that the Company had meritorious defenses to and arguments against the motion for Provisional Equitable Relief.

5.     By failing to adequately advise the Company, to oppose the application for Provisional Equitable Relief, and to demand that Baliga or Mr. Seiden post a bond as security for the extraordinary relief requested by Baliga, Defendants failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and caused the Company to sustain actual and ascertainable damages.

6.     But for Defendants' negligence, the Company would not have suffered damages.

## PARTIES

7.      Plaintiff Link Motion, Inc. is a limited company organized and existing under the laws of the Cayman Islands. The Company's registered office address is c/o Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands. The Company was incorporated in the Cayman Islands in 2007. Its principal office and management are located in Beijing, China.

8.      On information and belief, Defendant DLA is a limited liability partnership organized under the laws of the State of Maryland and authorized to conduct business in the State of New York. On information and belief, DLA maintains offices in New York at 1251 Avenue of the Americas, 27th Floor, New York, NY 10020.

9.      On information and belief, Defendant Schechtman is a natural person residing in New York or otherwise maintaining a legal office in New York at 1251 Avenue of the Americas, 27th Floor, New York, NY 10020. On information and belief, Defendant Schechtman is an attorney authorized to practice law in the State of New York and is associated with DLA.

## JURISIDCTION AND VENUE

10.     This Court has personal jurisdiction over each of the Defendants pursuant to CPLR 301 as they are domiciled or conduct business in New York County, pursuant to CPLR 302 because the cause of action asserted herein arises directly from Defendants' tortious conduct that occurred in New York State and this County, and pursuant to CPLR 302 because Defendants have sufficient minimum contacts with New York State.

3

11.     Venue is proper in this County pursuant to CPLR 503(a) because Defendants' principal place of business is in New York County.

## FACTUAL BACKGROUND

### Defendants Knew the Identities of the Company's Registered Shareholders

12.     In 2018, the Company engaged Defendant DLA to represent the Company in connection with the issuance of Class B shares to an investor. The scope of DLA's representation was "general corporate advice as well as in connection with an issuance of Class B Shares."

13.     On or about July 19, 2018, the Class B shares were issued to the investor. Once the shares were issued, the Company's registry of shareholders was updated to reflect the investor as a registered shareholder. As the Company's legal advisors on the transaction, Defendants completed this task or advised regarding its completion.

14.     During the course of Defendants' work on the Class B share issuance, Defendants knew or should have known the identities of each of the 26 registered shareholders of the Company. Baliga was not listed as a registered shareholder.

### The Derivative Action Filed Against the Company

15.     On December 13, 2018, Baliga filed the Derivative Action in the U.S. District Court for the Southern District of New York. Baliga was represented by The Seiden Law Group. Robert W. Seiden was the managing partner of The Seiden Law Group.

4

16.     In the Derivative Complaint, Baliga asserted claims of corporate mismanagement and securities fraud derivatively on behalf of the Company. Baliga requested money damages, injunctive relief, and the appointment of Mr. Seiden – his counsel – as receiver for the Company.

17.     The Derivative Complaint also alleged that "Mr. Baliga is currently and has at all material times of this Action been a shareholder of LKM [Plaintiff]."[1] The Derivative Complaint further alleged that "Mr. Baliga brings this action derivatively in the right and for the benefit of LKM [Plaintiff]."[2]

18.     Those allegations in the Derivative Complaint were false at the time they were made because Baliga is not, and never has been, a registered shareholder of the Company and does not and never had standing to assert derivative claims on behalf of the Company. The Defendants knew or should have known that these allegations were false.

19.     At all relevant times, Baliga, a natural person residing in Indiana, held the Company's American Depositary Receipts ("ADRs")[3] that were listed on the NYSE.[4]

20.     It is black letter law that the internal affairs of corporate entities are governed by the laws of the jurisdiction of incorporation pursuant to what is known

---

[1] Derivative Action, Dkt. No. 1, at ¶ 4.

[2] Derivative Action, Dkt. No. 1, at ¶¶ 32, 33.

[3] Each ADR represents rights to ownership of stated denominations of American Depositary Shares ("ADS") of Plaintiff. ADSs are not registered shares of stock of Plaintiff, but rather contractual rights. An ADR is evidence of the underlying ADSs.

[4] After the Receiver was appointed, the NYSE delisted Plaintiff's ADSs.

5

as the "internal affairs doctrine." *E.g.*, *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011); *Winn v. Schafer*, 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007). The internal affairs doctrine also requires that the issue of standing of any person to bring derivative claims be governed by the laws of the jurisdiction of incorporation. *E.g.*, *Howe*, 783 F. Supp. 2d at 475; *Winn*, 499 F. Supp. 2d at 395.

21.     Under the laws of the Cayman Islands, only registered owners of shares of stock in a Cayman Islands limited company have standing to bring derivative claims on behalf of the company (and then only in limited situations). *See, e.g., Davis v. Scottish Re Group Ltd.*, 160 A.D.3d 114, 116 (1st Dep't 2018) ("Under Cayman Islands law . . . derivative claims are owned and controlled by the company, not its shareholders," meaning that "a shareholder is not permitted to bring a derivative action on behalf of that company" with "only four narrow exceptions") (cleaned up).[5]

22.     Under the laws of the Cayman Islands, owners of securities such as ADSs are considered "beneficial" owners: their names are not entered on the books of the company as a "registered" shareholder. Beneficial owners do not have standing to bring derivative claims on behalf of the Cayman Island limited companies such as

---

[5] *See also Winn v. Schafer*, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007); *Shenwick v. HM Ruby Fund, L.P.*, 106 A.D.3d 638, 639 (1st Dep't 2013); *Top Jet Enterprises Ltd. v. Sino Jet Holdings Ltd.*, 2018 (1) CILR 18 (Cayman Islands Grand Court, Financial Services Division 2018) (*available at* Derivative Action Dkt. No. 17-1); Declaration of Katharine L. B. Pearson, dated 3 March 2020, Derivative Action, Dkt. No. 131 ("Pearson Expert Opinion") (citing *Top Jet*, 2018 (1) CILR 18, and *Svanstrom and Nine Others v. Jonasson*, 1997 CILR 192 (Cayman Islands Grand Court, Financial Services Division 1997)).

6

the Company.[6] *See, e.g., Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC*, 33 Mass. L. Rep. 626 (2016) (beneficial owner had no standing to sue derivatively Cayman Island law because he was not a registered shareholder); *Matter of Renren, Inc. Derivative Litig. v. XXX*, Index No. 653594/2018, 2022 NY Slip Op 22069, ¶ 4, 74 Misc. 3d 1123, 1127, 165 N.Y.S.3d 681, 684-85 (N.Y. County Sup. Ct. Mar. 9, 2022) (only registered shareholders have standing to sue derivatively under Cayman Islands law).[7]

23.     At all relevant times, Baliga owned only ADSs of the Company and, as such, he is only a beneficial owner of shares of stock in the Company. Baliga, at all relevant times, lacked standing to bring common law derivative claims on behalf of the Company.[8]

24.     There is no exception under Cayman Islands law that would have allowed Baliga, as a beneficial owner, to bring a derivative claim on behalf of Plaintiff in December 2018.[9]

---

[6] *See* Pearson Expert Opinion. In her declaration, Ms. Pearson, a Cayman Islands attorney, opines that, under the laws of the Cayman Islands, holders of ADSs do not have standing to act derivatively on behalf of Cayman Islands limited companies.

[7] The Cayman Islands follows the English rule, as do many other common law jurisdictions.

[8] *See* Pearson Expert Opinion; *see also* Affirmation of Justice Ingrid Mangatal (Ret'd), former Justice of the Grand Court of the Cayman Islands, dated 2 March 2022, *In re RenRen Inc. Derivative Litigation*, Index No. 653594/2018, NYSCEF Doc. No. 957 (March 3, 2022) (Justice Mangatal Opinion), at ¶22 ("under Cayman Islands law, a prospective shareholder plaintiff must be a current registered shareholder of the company in order to bring a derivative action.").

[9] *See* Pearson Expert Opinion; Justice Mangatal Opinion.

25.     Nor did Baliga's Derivative Complaint state causes of action for securities fraud under Sections 10(b) and 20 of the Securities and Exchange Act of 1934 that were sufficient to support his request for Provisional Equitable Relief.

### Defendants Commit Malpractice

26.     On or about the same day the Derivative Complaint was filed, December 13, 2018, The Seiden Law Group (which served as counsel for Baliga) sent DLA copies of the filed papers, noting that The Seiden Law Group intended to file an order to show cause why an order should not be entered granting the requested Provisional Equitable Relief, including a temporary restraining order, preliminary injunction, and appointment of that firm's managing partner, Mr. Seiden, as receiver for Plaintiff.

27.     Baliga's request for the Provisional Equitable Relief was grounded in his assertion that he was likely to prevail on the merits of his breach-of-fiduciary-duty claim, a common law claim that required standing under Cayman Islands law in order to be brought on a derivative basis.

28.     In a December 13, 2018 email to Plaintiff's then in-house counsel, Defendant Schechtman advised that DLA would "send an associate" to appear before the Court in connection with Baliga's application for a temporary restraining order (the "TRO") and to advise the Court that "we have received no instruction from the Company due to the time difference and language barriers."

29.     In that email, Defendants failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any common law derivative claims or seek entry of the temporary injunctive relief on behalf of the

Company. Defendants also failed to advise the Company of the other defects in the Derivative Complaint.

30. DLA appeared at the December 14, 2018 TRO hearing on behalf of Plaintiff.

31. At the time of the hearing, because of their on-going representation of the Company, Defendants knew or should have known that the Company had meritorious defenses and arguments against the request for Provisional Equitable Relief because Baliga was not a registered shareholder and, therefore, lacked standing under Rule 23.1 and Cayman Islands law to act derivatively on behalf of the Company.

32. Defendants knew or should have known that the Company had meritorious defenses and arguments against the request for Provisional Equitable Relief based on defects in Baliga's Derivative Complaint, including the claim for federal securities fraud.

33. On information and belief, Defendants failed to present to the Court **any any evidence** (such as the shareholder registry in Defendants' possession showing that Baliga lacked standing) or **any argument** that Baliga lacked standing to bring derivative claims, had failed to state valid securities fraud claims, that he should be required to post security, or any other arguments against the motion for Provisional Equitable Relief.

34.     With no opposition by the Defendants or any request that Baliga post a bond, the Court entered a TRO against the Company on December 14, 2018, in the form requested by Mr. Seiden and The Seiden Law Group and without any security.

35.     DLA's appearance in the Baliga Action establishes that DLA represented the Company in connection with the litigation, notwithstanding that the litigation was outside the scope of DLA's prior written agreement with the Company.

36.     By appearing in the Derivative Action and submitting papers on behalf of the Company, DLA undertook a new attorney-client relationship with the Company.

37.     Following the December 14, 2018 TRO hearing, DLA continued to file papers on behalf of the Company and otherwise acted as counsel for the Company in connection with the Derivative Action.

38.     Defendants had a duty to represent the Company competently in connection with the opposition to the motion for Provisional Equitable Relief.

39.     On information and belief, at all relevant times Defendant Schechtman supervised and directed DLA's representation of the Company in the Derivative Action.

**Defendants Failed to Correct Their Mistakes and Omissions**

40.     On December 19, 2018, counsel for Baliga requested that the Company consent to an extension of the TRO until the court ruled on Baliga's motion for Provisional Equitable Relief.

41.     On December 19, 2018, Defendants wrote to the Chairman of the Company's Board of Directors regarding the request. In the email, Defendants again

10

failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring derivative claims or seek entry of a preliminary injunction or appointment of a receiver.[10] Defendants also failed to advise the Company that Baliga lacked standing, had not stated a claim for securities fraud, and was not entitled to the Provisional Equitable Relief.

42.     At the time Defendants sent the December 19, 2018 email, Defendants knew of the existence of time differences and language barriers that affected Defendants' ability to communicate with and adequately advise their client, the Company. Defendants knew or should have known that these significant time differences and language barriers needed to be taken into account in order to competently render legal advice to the Company and in order to obtain informed consent.

43.     Without competent legal advice from its counsel (Defendants DLA and Schectman) concerning the defenses and arguments against Baliga's request for Provisional Equitable Relief, it was impossible for the Company to give informed consent to continue the TRO.

44.     Defendants did not provide any substantive, non-perfunctory advice or analysis to the Company concerning the Derivative Complaint, the pending motion, what the TRO meant for the Company, what a preliminary injunction might entail,

---

[10] On information and belief, the content of the December 19, 2018 email was drafted by Defendant Schechtman.

or what appointment of a receiver would mean for the Company, its governance, and its operations.

45.     The Company did not give (and could not have given) informed consent to continuing the TRO because Defendants failed to advise the Company of its defenses and arguments against Baliga's motion for Provisional Equitable Relief and did not advise the Company that Baliga could be required to post a bond before obtaining that relief.

46.     Even though the Company had meritorious defenses to Baliga's request for Provisional Equitable Relief and appointment of a receiver, and without properly advising the Company or obtaining the Company's informed consent or authorization, Defendant Schechtman co-signed a "Joint Letter" filed in the Derivative Action on December 21, 2018 stating that "[the Company] does consent" to continuing the TRO.[11]

47.     On January 14, 2019, the Defendants wrote an email to the Company regarding the pending motion by Baliga for Provisional Equitable Relief.

48.     In the email, Defendants again failed to advise the Company of its meritorious arguments against and defenses to the motion for Provisional Equitable Relief.[12]

---

[11] Derivative Action, Dkt. No. 7.

[12] On information and belief, the content of the January 15, 2019 email was drafted by Defendant Schechtman.

Case 1:22-cv-08313-VM  Document 1-1  Filed 09/29/22  Page 15 of 24

49. In fact, Defendants provided no substantive or non-perfunctory advice or analysis to the Company concerning the Derivative Complaint or the pending motion.

50. Nor did Defendants give more than perfunctory advice concerning what a preliminary injunction might entail or what a receiver would mean for the Company, its governance, and its operations.

51. On January 19, 2019 (a Saturday), the Defendants wrote an email to the Company's executives, who were in Beijing, advising that "if we do not hear back from you within 24 hours, DLA will _**assume**_ that we have Link Motion's consent not to oppose the motion." (emphasis added).

52. At the time Defendants sent the January 19, 2019 email, Defendants knew of time difference and language barriers to the rendering of competent legal advice to the Company.

53. In the January 19, 2019 email, Defendants again failed to advise the Company of its meritorious defenses and arguments to motion for Provisional Equitable Relief.[13] Defendants provided no substantive advice or analysis to the Company concerning the Derivative Complaint or the pending motion.

54. Nor did Defendants provide more than perfunctory advice concerning what a preliminary injunction might entail or what a receiver would mean for the Company, its governance, and its operations in the January 19, 2019 email.

---

[13] On information and belief, the content of the January 19, 2019 email was drafted by Defendant Schechtman.

55. The Company did not give (and could not have given) informed consent to entry of a preliminary injunction and appointment of a receiver.

56. Given the substantial time difference and language barriers, and the unusual and unexpected advice from Defendants (without explanation) to not oppose the preliminary injunction and appointment of a receiver, it was impossible for the Company to respond to the January 19, 2019 email within the unreasonably short time period imposed by Defendants.

57. Without advice from Defendants concerning the Company's defenses and arguments, or the ramifications of entry of the preliminary injunctive order and appointment of a receiver, it was impossible for the Company to give informed consent.

58. Defendants also failed to advise the Company of the requirement that applicants for preliminary injunctions and the appointment of a receiver must post security for such relief. Defendants failed to request, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, that the Court order Baliga or Mr. Seiden to post security sufficient to protect the Company.

59. Without informed consent from the Company, Defendants signed a "Stipulation" filed in the Derivative Action on January 21, 2019.[14] Defendants stipulated that the Company "does not oppose the Preliminary Injunction."

---

[14] Derivative Action, Dkt. No. 22.

Case 1:22-cv-08313-VM   Document 1-1   Filed 09/29/22   Page 17 of 24

60.     By stipulating to not oppose the preliminary injunction and imposition of the receiver, Defendants effectively waived the Company's right to object to Baliga's application for Provisional Equitable Relief.

61.     Defendants also waived the Company's right to request adequate security for the Provisional Equitable Relief requested by Baliga.

62.     Based on Defendants' failure to assert the Company's meritorious defenses and arguments against the request for Provisional Equitable Relief, Defendants' failure to request adequate security pursuant to Rule 65(c), and Defendants' false representations that the Company had given informed consent to the relief, on February 1, 2019, the federal court entered an order appointing Mr. Seiden as receiver for the Company (the "Receiver") and preliminarily enjoining the Company in the form requested by Baliga and Mr. Seiden.[15]

63.     One month later, Defendants moved for leave to withdraw as counsel to the Company. In their withdrawal papers, Defendants failed to advise the federal court of the Company's defenses or that Defendants had acted without the Company's informed consent.

64.     Defendants failed to advise the federal court that they had signed the stipulation on behalf of the Company based on Defendants' ***assumption*** that the Company's Board would rather give up control of the Company and waive its right to demand adequate security pursuant to Rule 65(c) rather than assert meritorious defenses and arguments to the Provisional Equitable Relief. Defendants made this

---

[15] Derivative Action, Dkt. No. 26.

assumption without informing the Company's Board of the Company's viable defenses or the Company's right to demand that Baliga post a bond pursuant to Rule 65(c).

65.    The foregoing conduct by Defendants constitutes legal malpractice.

66.    After failing to give their client — the Company — competent legal advice, the Defendants dropped their client like the proverbial hot potato.

## Defendants' Incompetent Advice Was the But-For Cause of the Company's Actual and Ascertainable Damages

67.    Defendants' incompetent and untimely legal representation was the but-for cause of the entry of the TRO and the preliminary injunction and the appointment of the Receiver. If Defendants had provided the Company with competent and timely legal representation, the Company could have asserted meritorious defenses to the imposition of the Receiver. In addition, the Company could have insisted that Baliga and the Receiver post a bond pursuant to Rule 65(c).

68.    By its terms, the receivership order that Defendants consented to on behalf of the Company gave the Receiver plenary powers, including, among others, the right to "assume full control of the Company"; to "tak[e] sole control over the Company's assets, subsidiaries, and bank accounts"; and the "power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise." Derivative Action, Dkt. No. 31. The receivership order also enjoined the Company from transferring any of its assets.

69.  As a result, Defendants are liable for all consequential damages caused by the imposition of the Receiver and the lack of a bond to protect the Company's interests, including the following:

a. **Substantial litigation expenses**, that the Company would not have incurred but for the entry of the TRO, the preliminary injunction, and appointment of the receiver;

b. **The costs and expenses associated with the Receiver and the receivership**, which will be charged to the Company. These costs and expenses would not have incurred but for Defendants' legal malpractice and entry of the preliminary injunction and appointment of the Receiver. These costs and expenses are calculable and will be determined as part of an accounting ordered by the federal court in the Derivative Action. The Company would have been secured against these charges had Defendants demanded a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

c. **The loss of gains and other benefits as a result of interruption to the Company's divestment of its legacy business segment, including loss of an expected and ascertainable gain of $180 million.** Damages caused by the interruption of this divestment were foreseeable and calculable because the Company had already substantially completed performance of its planned divestment. All that remained was to finally transfer ownership of the underlying asset out of escrow to the purchaser, which would have been completed but for entry of the TRO and preliminary injunction. Had the Company been permitted to complete this transfer, the Company would have realized gains from this transaction, which had already been calculated by the Company; and

d. **Dissipation of the Company's cash and other liquid assets**, which the Receiver used to pay himself, his law firm, and other service

17

providers in New York, the Cayman Islands, the Hong Kong Special Administrative Region, China, and elsewhere. On information and belief, these damages alone exceed $1,000,000.

70.     These damages were foreseeable and are calculable.

### Plaintiff's Legal Malpractice Claim is Timely

71.     The Company's legal malpractice claim against Defendants is timely based on the New York Executive Orders which tolled the statutes of limitations for 228 days in connection with the COVID-19 pandemic. *See*, *e.g.*, 9 N.Y.C.R.R. §8.202.8 (March 20, 2020 New York State Executive Order); 9 N.Y.C.R.R. §8.202.67 (October 4, 2020 New York State Executive Order). The 228 days are added onto the end of the limitations period.

72.     Alternatively, Plaintiff's legal malpractice claim is timely based on equitable tolling, as the Receiver refused multiple times while he was in control of the Company to assert the Company's legal malpractice claim against Defendants. On August 25, 2022, the U.S. District Court for the Southern District of New York ordered discharge of the Receiver (subject to an accounting) and dissolution of the preliminary injunction against the Company.

### FIRST CAUSE OF ACTION
### (Legal malpractice against all Defendants)

73.     The Company restates and realleges each of the foregoing paragraphs as if fully set forth herein.

74.    Defendants undertook to represent and defend the Company in the Derivative Action by, *inter alia*, appearing in and making submissions to the Court on behalf of the Company.

75.    In undertaking the representation of the Company, Defendants represented that they possessed the ordinary and reasonable skill, diligence, and knowledge of New York attorneys and had the requisite skill and experience necessary to represent the Company adequately in connection with the defense of the Derivative Action and requested Provisional Equitable Relief.

76.    Defendants breached the duty of care owed to the Company by failing to exercise the ordinary and reasonable skill, diligence, and knowledge of member of the New York Bar by errors and omissions as alleged above.

77.    Defendants breached their duty of care and loyalty to the Company by signing a stipulation, without informed consent, that was contrary to the Company's interests.

78.    Defendants' breaches of the duty of care owed to the Company, include but are not limited to:

a.    failing to recognize that Baliga lacked standing to assert derivative claims under Cayman Islands law;

b.    failing to recognize the defense that Baliga lacked standing under Rule 23.1 of the Federal Rules of Civil Procedure;

c.    failing to recognize that in his Derivative Complaint, Baliga failed to state all the elements of causes of action under the Securities and Exchange Act of 1934 and failing to recognize that Baliga's securities

19

FILED: NEW YORK COUNTY CLERK 09/12/2022 04:33 PM
NYSCEF DOC. NO. 1    Case 1.22-cv-08313-VM   Document 1-1   Filed 09/29/22   Page 22 of 24

INDEX NO. 653322/2022

RECEIVED NYSCEF: 09/12/2022

claims otherwise failed to support his request for the Provisional Equitable Relief;

d.   failing to advise the Company that Baliga lacked standing to bring derivative claims and failed to state causes of action for violation of the federal securities laws;

e.   failing to advise the federal court that the Company had meritorious defenses against Baliga's request for preliminary injunctive relief and appointment of the receiver under Article VIII of the Federal Rules of Civil Procedure;

f.   failing to request that Baliga or Mr. Seiden post adequate security for the Provisional Equitable Relief requested in the Derivative Action;

g.   signing—without informed consent—a stipulation agreeing to not oppose the preliminary injunction and imposition of a receivership and without requesting security; and

h.   withdrawing as counsel for the Company under circumstances that caused prejudice to the Company.

79.   But for Defendants' negligent actions, errors, and omissions, a TRO would not have been entered, the Company would not have conceded to the entry of a preliminary injunction and appointment of a receiver, and the Company would have avoided being placed in receivership.

80.   But for Defendants' negligent actions, errors, and omissions, the Company would have had the benefit of security posted by Baliga and/or Mr. Seiden before entry of a preliminary injunction and appointment of a receiver.

81.     Specifically, had Defendants advised the Company that it had meritorious defenses and arguments to Baliga's request for Provisional Equitable Relief, Plaintiff would have instructed Defendants to oppose that request. Defendants also had a professional duty to advise the federal court of the Company's defenses and arguments in opposition to Baliga's request for Provisional Equitable Relief, including the requirement for security.

82.     Had Defendants raised those defenses and arguments with the court, the federal court would not have granted the Provisional Equitable Relief requested by Baliga or the federal court would have ordered Baliga to post security for that relief pursuant to Rule 65(c).

83.     As a result of Defendants' negligence and malpractice, the Company has suffered damages in an amount to be determined at trial, but in no event less than $500,000.

## **PRAYER FOR RELIEF**

WHEREFORE, the Company demands judgment against Defendants, jointly and severally, and in favor of the Company as follows:

(a)     Awarding the Company general, special, and consequential damages in amounts to be determined at trial but not less than $500,000;

(b)     Awarding the Company punitive damages;

(c)     Awarding the Company pre-judgment interest, post-judgment interest, and attorney's fees;

(d)     Awarding the Company the costs and disbursements of this action, including reasonable allowance of fees and costs for attorneys, experts, and accountants; and

(e)   Granting the Company such other and further relief as this Court deems just and proper.

### JURY DEMAND

The Company hereby demands a trial by jury as to all claims so triable.

Dated: New York, New York
September 12, 2022

FELICELLO LAW P.C.

By:   */s/ Michael James Maloney*
Michael James Maloney
Rosanne E. Felicello
Kristie M. Blase
366 Madison Avenue, 3rd Fl.
New York, NY 10017
(212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
kristie@felicellolaw.com

*Attorneys for Plaintiff Link Motion Inc.*