# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Nancy Hart
Direct: +1 212.351.3897
Fax: +1 212.351.6273
NHart@gibsondunn.com

October 12, 2022

VIA ECF AND E-MAIL

Michael James Maloney
Rosanne E. Felicello
Felicello Law P.C.
366 Madison Avenue, 3rd Fl.
New York, NY 10017

Re: *Link Motion Inc. v. DLA Piper LLP (US) et al.*, Case No. 1:22-cv-08313 (S.D.N.Y.)

Dear Mr. Maloney and Ms. Felicello:

We write pursuant to Rule II.B of Judge Marrero's Individual Practices to inform you that Defendants DLA Piper LLP (US) and Caryn Schechtman (collectively, "DLA") intend to move to dismiss Link Motion's Complaint as soon as permitted by the Court should Plaintiff not dismiss the above-referenced action.

The Complaint, like the one that is currently subject to our pending Rule 11 Motion, is unsustainable, replete with false allegations, and sanctionable. As a threshold matter, your client lacks the authority to bring this litigation against DLA. As the Court has recently confirmed yet again, the Receivership ordered in *Baliga v. Link Motion, Inc.*, No. 1:18-cv-11642 (S.D.N.Y.) ("Baliga Action") has not been dissolved, and the Receiver alone retains the exclusive right to commence and maintain litigation on behalf of Link Motion—and the Receiver has declined to do so. Thus, as the Court held, the supposed "Board's decision" purportedly authorizing you to bring this suit "violated the Court's Orders." Baliga Dkt 365 at 10-11. Accordingly, this litigation must be dismissed immediately; any other actions you take in furtherance of this lawsuit will constitute additional violations of the Court's Orders.

Your unauthorized lawsuit is also completely meritless and based on known falsehoods. As you know, DLA briefly appeared in the Baliga Action "in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter." Baliga Dkt. 28 at 6. Far from dropping Link Motion "like the proverbial hot potato," DLA was permitted by the Court to withdraw because Link Motion utterly "failed to cooperate in the representation by failing to respond" to DLA's repeated requests for guidance; and stated that "it d[id] not have sufficient assets and cannot pay DLA's legal fees at this time." *Id*. Ignoring these facts, your lawsuit claims DLA "knew or should have known" that Baliga was not, as he had alleged, a Link Motion shareholder, but instead only held American Depository Shares ("ADS"). You allege that DLA—despite not having been engaged to substantively defend Link Motion—should have identified a potential and unsettled legal argument that Baliga lacked standing to assert his derivative claims on that basis, as well as unspecified "defects" in his federal securities claims. You then allege that a wildly speculative chain of events would not otherwise have unfolded, resulting in the Receiver's alleged failure to fulfill Link Motion's obligation to complete an unnamed transaction relating to its "legacy business segment" worth $180 million.

Although you now disingenuously avoid identifying this "legacy business segment" divestment by name, these allegations obviously refer to the same transaction that was central to your lawsuit on behalf of China AI—the purchase by Tongfang Investment Fund Series SPC ("Tongfang") of Link Motion's interests in FL Mobile Jiutian Technology Co., Ltd. As we have repeatedly informed you, Link Motion's own public

GIBSON DUNN

Page 2

filings and documents refute the allegations that the transaction was not effectuated and that Link Motion "lost" $180 million.  It is thus unconscionable that you continue to push this lie, albeit in a strategically more conclusory fashion.[1]  Your claims should be dismissed on this basis alone.  But there is more.  As with your China AI claim, your copycat claim here suffers from myriad procedural, factual and legal defects, as well as your conflict of interest in representing simultaneously Link Motion, China AI, and Vincent Shi, as we have previously noted.

*First*, your Complaint is time-barred.  The statute of limitations for legal malpractice claims is three years, CPLR 214(6), running from the date "when the malpractice [wa]s committed," *Noskov v. Roth*, 2020 WL 4041125, at *4 (S.D.N.Y. July 17, 2020).  That was January 21, 2019 at the latest, ¶ 59, when the stipulation (that Link Motion consented to be filed) agreed not to oppose Baliga's motion to appoint the Receiver temporarily.  Your complaint, filed on September 12, 2022, was therefore filed nearly eight months late.

Neither of the "tolling" arguments asserted in your Complaint has merit.  ¶¶ 71-72.  Even if New York Executive Orders issued in 2020 in response to the COVID-19 pandemic "tolled" the limitations period for 228 days, ¶ 71, that period would have run by September 5, 2022, a week before the Complaint was filed.  In any event, multiple courts—including this one—have declined to apply those Orders where, as here, the relevant deadline expired outside the suspension period.  *See Barry v. Royal Air Maroc*, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022) ("EO 202.8 . . . did not lengthen periods that expired after November 3, 2020"), *report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022).

As for purported "equitable tolling or equitable estoppel," Link Motion must show that *Defendants* induced it "by fraud, misrepresentations or deception to refrain from filing a timely action."  *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *see also Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022).  There is no such allegation here; nor could there be.  That the Receiver "refused to bring suit," ¶ 72, confirms only that it was determined not to be in Link Motion's interests to assert a meritless lawsuit against DLA.

*Second*, although DLA was in no way negligent, Link Motion also cannot show causation.  Your client must meet the "high bar" of showing that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome."  *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (citation omitted).  Moreover, claims against law firms "couched in terms of gross speculation on future events" are too "speculative" to adequately plead "but for" causation.  *See Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP*, 133 A.D.3d 428, 429 (1st Dep't 2015).  Yet your claims here improperly rest on an inherently speculative attempt to link DLA's actions to damages supposedly caused **by the Court-appointed Receiver**.  In fact, the largest category of damages—the loss of a supposed $180 million deferred gain from the Tongfang transaction—depends on the Receiver refusing to abide by Link Motion's contractual obligations, which would sever the causal chain, as would the Court's oversight of the Receivership.  *See Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014) (finding approval of settlement by a board of directors is an "'intervening and superseding' cause").

Beyond that, the Court has determined that that appointment of the Receiver was proper regardless of the standing argument you wrongfully claim DLA should have asserted, and Link Motion thus cannot show that the Receiver would not have been appointed "but for" DLA's conduct.  As the Court recently affirmed,

---

[1] This Complaint conspicuously deleted all references to the arbitration initiated by Tongfang against Link Motion—and the $400 million arbitral award that purportedly issued—that had previously been the centerpiece of the China AI Action.  *See* China AI Dkt. 1.

GIBSON DUNN

Page 3

Baliga "had standing to bring the [federal] securities-law claims . . . [which] afforded the Court subject-matter jurisdiction to issue the challenged [Receivership] Order." Baliga Dkt 275 at 18 (R&R); Baliga Dkt 331 at 12, 17–18 (adopting R&R and finding that "Baliga had standing to bring his derivative securities claims" and "the Receiver was duly appointed"). Thus, even if DLA had challenged Baliga's standing to bring derivative claims, "it would ultimately [have] be[en] immaterial to the outcome." Baliga Dkt 275 at 22 n.9. Moreover, you have now filed two motions to dismiss challenging the sufficiency of Baliga's federal securities claims, but have been unable to dispense with those claims. Indeed, Magistrate Judge Figueredo recently recommended that the second motion be denied, finding that Baliga had adequately alleged violation of the securities laws. Baliga Dkt 328 at 22-50. As such, you cannot meet your burden to "show that [Link Motion] would have prevailed in the underlying action but for the lawyer's negligence." *Dondero v Chopra and Nocerino LLP*, 2022 WL 320967 at *2 (2d Cir. Feb. 3, 2022). And the fact that you, as Link Motion's counsel, had ample opportunity to raise any "defects" in Baliga's complaint, including his purported lack of standing (Baliga admitted in open court in April 2019 that he only held ADSs), independently defeats causation (and renders you a conflicted percipient witness). DLA is not liable for alleged harm where you had "sufficient opportunity to protect the [client's] rights." *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013).

*Third*, as discussed above, your client's vague allegations concerning a purported "loss of an expected and ascertainable gain of $180 million" from the "interruption" of the FL Mobile transaction with Tongfang are not only untethered to DLA's alleged conduct, they are completely false. Link Motion's SEC filings and press releases establish that the transfer was completed *before* the Receiver was ever appointed, and that *Tongfang* thereafter had pledged its newly-acquired FL Mobile shares as security for its remaining payment obligations. *See* China AI Dkt 36 at 14-15, 21-23. Moreover, the assertion that Tongfang would have fulfilled those obligations but for the Receivership (despite having previously refused to do so) is entirely speculative, especially since Tongfang had defaulted on them before the Receiver was appointed.

*Fourth*, Link Motion's other allegations of unspecified "damages caused by the imposition of the Receiver," ¶ 69, are equally unfounded. *See Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) ("[S]cant allegations concerning [] lost value . . . are wholly speculative and do not give rise to a reasonable inference that any damages exist."). Your new allegation that a receivership bond would have prevented Link Motion from incurring costs and expenses associated with the Receivership makes no sense. Defendants cannot be liable for Court-approved costs of a Receiver that was correctly appointed and has added significant value to Link Motion. *See* Baliga Dkt 275 at 37 ("the Receiver seems to have recovered substantial Company assets"); Baliga Dkt 64 at 21 (Receiver was "necessary to protect against 'the imminent danger of the property being lost'" given "the perilous situation of the Company").

You have caused significant damage with your continued frivolous allegations. Enough is enough. If you continue to abuse the judicial process and recklessly damage our clients, we intend to pursue all remedies available against you, your law firm and your client.

Sincerely,

/s/  Nancy Hart

cc:   Hon. Victor Marrero, USDJ (*via ECF and E-Mail*)
      All counsel of record (*via ECF*)