**FELICELLO**

                      Michael James Maloney[*]        Felicello Law P.C.
                                  Partner          366 Madison Avenue
                                                         3rd Floor
                                                         New York, NY 10017

                                                         Tel. +1 (212) 517-0875
                                                   Direct +1 (646) 564-3510
                                                  mmaloney@felicellolaw.com

October 19, 2022

VIA EMAIL and ECF

Nancy Hart
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Tel. (212) 351-4000
Nhart@gibsondunn.com

       Re: *Link Motion Inc. v. DLA Piper LLP (US), et al.*, Case No. 1:22-cv-8313-VM

Dear Ms. Hart:

       We represent Link Motion, Inc. ("Link Motion"). Pursuant to Judge Marrero's Individual Practices, we write in response to Defendants' pre-motion letter of October 12, 2022. As set forth below, each of the points asserted in your letter lacks merit and a motion to dismiss would fail.

       As Judge Marrero recently made clear, Link Motion is not required to voluntarily dismiss this action as a result of the court's October 7, 2022 Decision and Order (the "*Baliga* Order") in *Baliga v. Link Motion Inc.* (1:18-cv-11642, the "*Baliga* Action," Dkt. No. 365). Specifically, the Court "declined to find the Board's September 2022 vote authorizing this malpractice suit . . . was a nullity." Dkt. 9 at 1. The Court further stated that "the *Baliga* Order does not require LKM to voluntarily dismiss its case," that this case "may proceed," and directed Link Motion to respond to your letter.

       Nor are any of your arguments in support of dismissal of this action persuasive. First, this action is not time-barred. The statute of limitations applicable to a claim for legal malpractice is tolled during the period of continuous representation. *Overseas Shipholding Grp., Inc. v. Proskauer Rose, LLP*, 130 A.D.3d 415, 415 (N.Y. App. Div. 1st Dep't 2015). Accordingly, the limitations period did not begin to run until at least March 1, 2019, the date on which the Court granted Defendants' request to withdraw as counsel. *See* Ex. 1. And the New York State Executive Orders cited in the Complaint tolled the limitations period for another 228 days (*i.e.*, October 15, 2022). *See*, *e.g.*, *Marquez v. Indian Taj, Inc.*, 2022 U.S. Dist. LEXIS 139845, at *6-7 (E.D.N.Y. Aug. 5, 2022) ("Courts in this Circuit have found that Executive Order 202.8 applies to federal cases involving New York state-law statutes of limitations.") (collecting cases).[1] Your reliance on *Barry v. Royal Air Maroc*, 2022 U.S. Dist. LEXIS 122225, 2022 WL 321505 (S.D.N.Y. July 8, 2022), is misplaced. There the claim arose under an international convention that was not subject

---

[1] *Powell v. United States*, 2022 U.S. Dist. LEXIS 93314, at *7-8 (S.D.N.Y. May 24, 2022); *Brash v. Richards*, 195 A.D.3d 582, 584-85 (N.Y. App. Div. 2d Dep't 2021).

                                                                   *Admitted to practice law in New York

to tolling. Here the claim arises under New York state law, is subject to the 228 days of tolling, and is not time-barred.

Second, Link Motion has sufficiently alleged causation under New York law. Plaintiff establishes causation on a legal malpractice claim by showing that the attorney's negligence "was one of the causes" of damage. *Kirk v. Heppt*, 2009 U.S. Dist. LEXIS 80989, at *28 (S.D.N.Y. Sept. 3, 2009), citing *Garten v. Shearman & Sterling LLP*, 52 A.D.3d 207 (N.Y. App. Div. 1st Dep't 2008) and *Barnett v. Schwartz*, 47 A.D.3d 197 (N.Y. App. Div. 2d Dep't 2007) ("'but for' causation is [not] synonymous with sole proximate cause"). The client "need not show that [the attorney's] negligence was the sole cause" of the client's damages. *Kirk*, 2009 U.S. Dist. LEXIS 80989, at *27-28, citing *Skinner v. Stone, Raskin & Isreal*, 724 F.2d 264, 266 (2d Cir. 1983) ("It is well-settled law in New York, that, when there are several proximate or efficient causes of an injury, the injury may be attributable to any one or more of the causes").

The Receiver's actions were not, as you claim, an intervening cause that cuts off Defendants' liability.[2] Defendants' malpractice, rather than any of the Receiver's conduct, caused Plaintiff's damages. In your letter, you refer to the "Tongfang transaction," but Plaintiff's theory of damages is focused on the Tongfang Note (*see infra*), which did not come finally due until December 29, 2018 (not earlier, as you wrongly state). *See* Ex. 2. Press releases from 2017 (Ex. 3[3]) show a history of past payments by Tongfang and, therefore, it is reasonable to expect that Tongfang Investment Fund Series SPC ("Tongfang") would have paid the Note on or before December 29, 2018. The temporary restraining order ("TRO") in the *Baliga* Action was entered on December 14, 2018, after Defendants failed to raise the defense of lack of standing and failure to state claims for securities fraud at the hearing. Like any reasonable purchaser, Tongfang would not pay the Note until the TRO was dissolved.[4]

Had the Defendants not consented to extend the TRO, it would have expired on December 28, 2018, Tongfang would have been able to timely pay the balance of the Tongfang Note, and Link Motion would have been able to release its security interest in the purchased shares. Defendants' malpractice prevented this from happening. Defendants then further exacerbated the damage by consenting to the entry of the preliminary injunction, making it impossible to complete the Tongfang transaction on the terms provided for in the Tongfang Note, and causing Link Motion to suffer the loss of the deferred gain of $180.4 million that Link Motion expected to realize from the Note. It was not the Receiver or his later actions that solely caused this loss.[5] Even assuming that the Receiver's actions contributed to damages, this conduct does not cut off Defendants' liability because "but for" causation does not require a showing of sole proximate cause. *See, e.g.*

---

[2] All the Receiver's actions were "normal or foreseeable consequence[s] of the situation created by the defendant's negligence." *Demetro v. Dormitory Auth. of the State of N.Y.*, 170 A.D.3d 437, 439 (N.Y. App. Div. 1st Dep't 2019) (cleaned up), citing and quoting *Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016) and *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016).

[3] Exhibit 3 is a compilation of Link Motion press releases.

[4] The TRO was widely publicized by the LKMForward group who hired The Seiden Law Group to obtain the TRO (*see* Ex. 4).

[5] You incorrectly state that Link Motion has walked away from the $400 million Tongfang Award as a measure of damages of Defendants' malpractice. Your premise is wrong: the Tongfang Award was never part of the damages sought by Link Motion or on behalf of Link Motion in China AI's complaint. Like this Complaint, China AI sought to recover the lost value of the Note, *i.e.*, $180.4 million.

*Skinner*, 724 F.2d at 266.

Nor does the Court's decision not to find the appointment of the Receiver *void ab initio* in the *Baliga* Action prevent Link Motion from stating a valid legal malpractice claim. The issue presented to the Court in the August 25, 2022 order was whether to vacate a prior order. That issue is legally distinct from the issue of legal malpractice on this claim and, therefore, the Court's rulings in the August 25, 2022 order are not determinative. *See [Houraney v. Burton & Assocs., P.C.](#)*, 2010 U.S. Dist. LEXIS 105020, at *23-24 (E.D.N.Y. Sept. 7, 2010) (collateral estoppel does not bar malpractice claims based on "materially deficient" representation); *[Gillin v. Patterson, Belknap, Webb & Tyler](#)*, 1994 N.Y. Misc. LEXIS 697, at *8-9 (1st Dep't 1994). *See also [Johnson v. Watkins](#)*, 101 F.3d 792 (2d Cir. 1996) ("collateral estoppel cannot be applied without first consideration the availability of [appellate] review").

Third, your letter purposefully misstates Link Motion's public filings and its transaction with Tongfang. What you write is factually wrong and your assertions that Link Motion acted improperly are at odds with Defendants' ***own contemporaneous*** knowledge and review of the transaction (obtained through participation in the Board's meetings and related investigations). *See* Exs. 5, 6, and 7. You wrongly claim that the transfer of Link Motion's FL Mobile business segment "was completed *before* the Receiver was ever appointed." It was not. After Link Motion and Tongfang agreed to payment terms in March 2017, they amended those terms in December 2017 to convert Tongfang's payment obligation into a senior promissory note (the "Tongfang Note") in exchange for a security interest in the FL Mobile shares. *See* Exs. 2, 3 at ECF p.18, and 8. By converting the original share purchase agreement to the Tongfang Note, Link Motion could permissibly "deconsolidate" FL Mobile's financial results and assets and liabilities, resulting in Link Motion booking a reduction in "assets held for sale," a corresponding increase in "Notes Receivable," and a "deferred gain" of $180.4 million. *See* Ex. 9. The $180.4 million represented the net gain Link Motion expected to realize upon payment of the Tongfang Note on or around December 29, 2018. *See* Ex. 9.

The term "completion" in the December 2017 press releases that you cite to refers to deconsolidation of financial results, not legal completion of Tongfang's obligations to Link Motion under the Note. *See* Ex. 2 and 9. As those same filings reflected, Tongfang had not completed its payments for the shares and Link Motion was not required to release its security interest in the shares until it received payment in full on or before December 29, 2018. Defendants knew this when the *Baliga* Action was filed because they had participated in Board meetings and investigations that ultimately concluded that there was no evidence sufficient to support allegations of misconduct concerning the FL Mobile transaction. *See* Exs. 5, 6, and 7.

Fourth, your assertion that "Defendants cannot be liable for Court-approved costs of a Receiver that was correctly appointed" is wholly unsupported and contrary to law. When a federal court appoints a receiver to manage a company's affairs, the company bears the costs of the receiver. *See*, *e.g.*, *[Netsphere, Inc. v. Baron](#)*, 703 F.3d 296, 311 (5th Cir. 2012). New York courts have permitted legal malpractice claims to proceed based on damages resulting from the improper consent by counsel to the appointment of receivers and other equitable relief. *See*, *e.g.*, *[Tiffany Gen. Holding Corp. v. Speno, Goldberg, Steingart & Penn, P.C.](#)*, 278 A.D.2d 306, 307-8 (N.Y. App. Div. 2d Dep't 2000). Had the Receiver not been appointed (or the costs of the Receiver secured by a bond), Link Motion would not face liability for these costs.

Nancy Hart, Esq.
October 19, 2022
Page 4 of 4

                                                  Sincerely,

                                                  */s/ Michael James Maloney*

                                                  Michael James Maloney

cc:      All counsel of record by ECF