**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Nancy Hart
Direct: 212.351.3897
nhart@gibsondunn.com

October 26, 2022

VIA ECF

The Honorable Victor Marrero
United States District Judge
Daniel Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Link Motion Inc. v. DLA Piper LLP (US) et al.*, Case No. 1:22-cv-08313 (S.D.N.Y.)

Dear Judge Marrero:

Defendants ("DLA") respectfully request permission to move to dismiss Plaintiff Link Motion Inc.'s Complaint. DLA explained the bases for this motion to Plaintiff ("MTD Letter"), ECF 7 (Ex. 1), but Plaintiff refused to withdraw the Complaint ("Response"), ECF 11 (Ex. 2). Instead, Plaintiff has again abandoned its own allegations and crafted a new flawed theory that contradicts its prior filings here and in *China AI Capital Ltd. v. DLA Piper LLP (US) et al.*, No. 1:21-cv-10911 (S.D.N.Y.) ("China AI Action").

Plaintiff asserts a legal malpractice claim arising out of *Baliga v. Link Motion Inc. et al.*, No. 1:18-cv-11642 (S.D.N.Y.) (the "Baliga Action"). DLA briefly appeared in that action in December 2018/January 2019, but withdrew when Plaintiff "failed to cooperate in the representation" and professed inability to pay DLA's legal fees. Baliga Dkt 28 at 6. Plaintiff nevertheless claims that with less than 24 hours' notice, DLA should have developed and asserted an unsettled legal argument that Baliga lacked derivative standing under Cayman Islands law because he only held American Depository Shares ("ADS"). Plaintiff speculates that, "but for" that alleged omission, the Court wouldn't have granted the *ex parte* TRO, imposed an injunction, or appointed a Receiver; and then the Receiver wouldn't have allegedly flouted Link Motion's contractual obligations, "interrupt[ed] the Company's divestment of its legacy business segment," and prevented Plaintiff from "transfer[ring] ownership of the underlying asset out of escrow to the purchaser," thereby losing a supposedly "ascertainable gain" of $180 million from the transaction. ECF 1-1 ¶ 69.

The original allegation in the China AI Action was that DLA's conduct led to the appointment of a Receiver who fraudulently "transferred FL Mobile [a Link Motion subsidiary] to one of his own affiliates and/or a member of the LKMForward group." China AI Dkt 1 ¶ 86. This, in turn, supposedly caused third-party Tongfang—to which Plaintiff had agreed to sell its FL Mobile shares—to initiate an arbitration that resulted in a nearly $400 million award. *Id.* After DLA exposed the Tongfang arbitration as a sham, Plaintiff's counsel conjured a new theory. In the Complaint here, Plaintiff disingenuously omitted all reference to Tongfang or FL Mobile, instead claiming vaguely that "the imposition of the Receiver . . . interrupt[ed] the Company's divestment of its legacy business segment" and prevented Plaintiff from "transfer[ring] ownership of the underlying asset out of escrow to the purchaser." ECF 1-1 ¶ 69. In its MTD Letter, DLA demonstrated that public filings and other documents proved these allegations to be false—that the FL Mobile shares *were* transferred to Tongfang in December 2017 in exchange for a $180 million Note with interest and principal due on December 12 and 14, 2018, respectively. ECF 11-2 at 11. Plaintiff's Response essentially concedes, as it must, that the allegations in its Complaint were untrue, but now claims that if DLA

Page 2

had raised an unsettled argument about the standing of ADS holders at an *ex parte* TRO hearing on December 14, 2018 (*i.e.*, the day after the Baliga Action was filed), this Court would not have issued a TRO that in turn caused Tongfang to breach the Note, an argument found nowhere in its Complaint.

Putting aside that Plaintiff manufactures new theories without any regard for the truth, this newest spin only confirms that Plaintiff's purported malpractice claim is impermissibly speculative and legally and factually deficient. **First**, in order to state a malpractice claim, Plaintiff must show that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (citation omitted). Claims that are "couched in terms of gross speculations on future events" are too "speculative" to establish "but for" causation. *Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP*, 133 A.D.3d 428, 429 (1st Dep't 2015). That is especially so where, as here, the claim depends on speculation as to a **third party's** conduct. *See, e.g., Ferguson v. Hauser*, 156 A.D.3d 425 (1st Dep't 2017) (affirming dismissal where malpractice claim depended on third-party cooperation, finding causal chain required speculation about future events); *Excelsior Capitol LLC v. K&L Gates LLP,* 138 A.D.3d 492, 492 (1st Dep't 2016) (legal malpractice claim dismissed at pleading stage because "it was speculative to believe" that a third party would have provided a required assurance for a claim to have proceeded); *Phillips-Smith Specialty Retail Grp. II v. Parker Chapin Flattau & Klimpl*, 265 A.D.2d 208, 210 (1st Dep't 1999) ("[T]he hypothetical course of events on which any determination of damages would have to be based, involving the nature and timing of acts by plaintiffs themselves, other parties . . . and the bankruptcy court, constitutes a chain of 'gross speculations on future events'.").

Plaintiff's newly-invented claim that third-party Tongfang would have paid at the eleventh hour but for a last minute TRO is rank speculation. In any event, nothing in that TRO—which merely stopped the transfer or dissipation of company assets—prevented Plaintiff from *receiving* payment on the Tongfang Note (which would have extinguished any pledged security interest, *see* ECF 11-8), taking action to enforce the Tongfang Note, or foreclosing on its security interest in the FL Mobile shares. Plaintiff did none of those things.

**Second**, the gravamen of the Complaint is that although Baliga alleged he was a Link Motion, he actually was not because he held only ADS and thus lacked standing to sue derivatively. Plaintiff claims that DLA should have asserted this unsettled standing argument, as well as unspecified "defects" in Baliga's federal securities claims. Plaintiff thus must show that, had DLA raised those arguments, the outcome would have been more favorable. But this Court has already held that that appointment of the Receiver was proper *despite* Plaintiff's proposed standing argument, because Baliga "had standing to bring the [federal] securities-law claims . . . [which] afforded the Court subject-matter jurisdiction to issue the challenged [Receivership] Order." Baliga Dkt 275 at 18 (R&R); Baliga Dkt 331 at 12, 17–18 (adopting R&R and finding that "Baliga had standing to bring his derivative securities claims" and "the Receiver was duly appointed"). Plaintiff's characterization of that "issue" as "legally distinct" is a non-sequitur. Plaintiff must establish that raising the issue of Baliga's derivative standing in 2019 would have prevented the appointment of the Receiver, and the Court has now affirmed that his derivative standing **"would ultimately [have] be[en] immaterial to the outcome."** Baliga Dkt 275 at 22 n.9 (emphasis added). The cases cited in the Response are inapposite, because here there has been a "full and fair opportunity to litigate" the (non)impact of the issue on the Court's authority to appoint the Receiver. *Houraney v. Burton & Assocs., P.C.*, 2010 WL 3926907, at *7 (E.D.N.Y. Sept. 7, 2010).

Nor can Plaintiff show that raising unspecified "defects" in Baliga's federal securities claims would have changed anything. Plaintiff's counsel has now filed two motions to dismiss in the Baliga Action, but has

Page 3

been unable to dispense with those claims. Indeed, Magistrate Judge Figueredo found that Baliga had adequately alleged violation of the securities laws. Baliga Dkt 328 at 22-50. Thus, Plaintiff cannot "show that [it] would have prevailed in the underlying action" had DLA attempted to raise some undefined "defects" in those claims. *Dondero v Chopra and Nocerino LLP*, 2022 WL 320967, at *2 (2d Cir. Feb. 3, 2022). Further, the fact that Plaintiff's counsel (who also represents defendant Shi in the Baliga Action) had ample opportunity to raise any such "defects" in Baliga's complaint independently defeats causation. DLA is not liable for alleged harm where Plaintiff's counsel had "sufficient opportunity to protect the [client's] rights." *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013).

*Third*, Plaintiff's claim here improperly rests on a speculative attempt to link DLA's actions to unspecified costs and other damages supposedly caused by the Court-appointed Receiver. For example, Plaintiff fails to explain why, had Tongfang paid Plaintiff $180 million, the Receiver would not have caused Link Motion to fulfill its contractual obligations and obtain those amounts. Any allegedly speculative wrongful actions by the Court-appointed Receiver here sever the causal chain, as does the Court's oversight of the Receivership. *See Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 F. App'x 79, 80 (2d Cir. 2014) (finding approval of settlement by a board of directors is an "'intervening and superseding' cause").

*Fourth*, Plaintiff's allegations of unspecified "damages caused by the imposition of the Receiver," ECF 1-1 ¶ 69, are equally unfounded. *See Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) ("[S]cant allegations concerning [] lost value . . . are wholly speculative and do not give rise to a reasonable inference that any damages exist."). Plaintiff claims that "[h]ad the Receiver not been appointed (or the costs of the Receiver secured by a bond), Link Motion would not face liability for these costs." Ex. 2 at 3. As noted above, the Court has *already* rejected Plaintiff's claim that the Receiver was improperly appointed, and found that Link Motion is properly responsible for the costs of the Receiver up to a certain date, after which Baliga is responsible for those costs. Baliga Dkt 275 at 40. The allegation that a receivership bond would have prevented Plaintiff from incurring those costs makes no sense. Besides, DLA is not liable for Court-approved costs of a Receiver who was properly appointed. *See* Baliga Dkt 275 at 37 ("the Receiver seems to have recovered substantial Company assets"); Baliga Dkt 64 at 21 (Receiver was "necessary to protect against 'the imminent danger of the property being lost'" given "the perilous situation of the Company").

*Fifth*, this action is time-barred. Plaintiff doesn't dispute that the three-year statute of limitations applies, CPLR 214(6), or that "equitable tolling" is unavailable (contrary to Plaintiff's Complaint, ECF 1-1 ¶ 72). *See* Ex. 1 at 2. Rather, Plaintiff relies on Executive Orders issued in 2020 regarding the pandemic even though those Orders "did not lengthen periods that"—like the one applicable to Plaintiff's claim here— "expired after November 3, 2020," the date the Executive Orders themselves expired.[1] *Barry v. Royal Air Maroc*, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022); *see Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723 (N.Y. Sup. Ct. Kings Cnty. 2022) ; *Cruz v. Guaba*, 159 N.Y.S.3d 828 (Table) (N.Y. Sup. Ct. Queens Cnty. 2022).

*Finally*, Plaintiff lacks capacity to sue. As the Court held, the "Board's decision" purportedly authorizing this suit "violated the Court's Orders." Baliga Action, Dkt 365 at 10-11, though we recognize that the Court has discretion to address the requested motion to dismiss on its merits.

---

[1] By contrast, the deadline at issue in the case cited by Plaintiff, as well as the Second Department decision it quotes (which Plaintiff also cites), would have expired *during* the period in which the Executive Orders were in effect. *See Marquez v. Indian Taj, Inc.*, 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022) (quoting *Brash v. Richards*, 149 N.Y.S.3d 560 (2d Dept. 2021)).

**GIBSON DUNN**

Page 4

Respectfully,

/s/ *Nancy Hart*

Nancy Hart

cc:  All Counsel of Record (*via ECF*)