UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                :

LINK MOTION INC.,              :

                                :

               Plaintiff,     :

                                :

     -against-            :  Case No. 1:22-cv-08313-VM

                                :

DLA PIPER LLP (US) and CARYN G.  :
SCHECHTMAN,

                                :

              Defendants.    :

                                :
--------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND

GIBSON, DUNN & CRUTCHER LLP

KEVIN S. ROSEN (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
KRosen@gibsondunn.com

NANCY HART
PETER M. WADE
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: 212.351.4000
NHart@gibsondunn.com
PWade@gibsondunn.com

*Attorneys for Defendants DLA Piper LLP
(US) and Caryn G. Schechtman*

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................. 5

ARGUMENT ....................................................................................................... 9

I.     Removal Was Proper Because The Court Has Federal "Arising Under" Jurisdiction Over This Action. ................................................................ 9

     A.    It Is Undisputed That Link Motion's Malpractice Claim "Necessarily Raises" Federal Issues. ...................................... 10

     B.    It Is Also Undisputed That The Federal Issues Raised In This Case Are "Actually Disputed." .................................................... 11

     C.    The Federal Issues Here Are "Substantial" Because Link Motion's Malpractice Claim Represents A Collateral Attack On Multiple Orders Of This Court And On Decisions By The Court-Appointed Receiver. ........................................................ 11

     D.    This Court Can Resolve The Federal Issues Raised By The Malpractice Claim Without Disrupting The Federal-State Balance. ....... 17

II.    Removal Was Also Proper For The Independent Reason That This Court Has Supplemental Jurisdiction Over This Action. ................................. 18

CONCLUSION .................................................................................................. 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Master Value Fund, Ltd. v. Ewing*,
  2014 WL 3600409 (S.D.N.Y. July 11, 2014) ...................................................20, 21

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)..........................................................4, 18, 19, 21

*Ahearn v. Charter Twp. of Bloomfield*,
  100 F.3d 451 (6th Cir. 1996) .......................................................................20

*Baliga v. Link Motion Inc.*,
  385 F. Supp. 3d 212 (S.D.N.Y. 2019)........................................................6, 7

*Baliga v. Link Motion Inc.*,
  2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022) ........................................2, 7, 8, 14

*Baliga v. Link Motion Inc.*,
  2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022).......................................2, 7, 8, 12, 15

*Cal. Med. Ass'n v. Shewry*,
  2008 WL 11338088 (C.D. Cal. June 23, 2008) ..........................................16

*Can. Life Assur. Co. v. LaPeter*,
  563 F.3d 837 (9th Cir. 2009) .......................................................................13

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
  839 F.2d 93 (2d Cir. 1988).......................................................................6, 13

*City of Chicago v. Int'l Coll. of Surgeons*,
  522 U.S. 156 (1997)...............................................................................4, 19

*Flutie Bros. v. Hayes*,
  2006 WL 1379594 (S.D.N.Y. May 18, 2006) ...........................................10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)...........................................................................1, 9, 16

*Gunn v. Minton*,
  568 U.S. 251 (2013)........................................1, 3, 10, 11, 14, 15, 16, 17

*Henson v. Ciba-Geigy Corp.*,
  261 F.3d 1065 (11th Cir. 2001) ................................................................20

*KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*,
  2020 WL 1157650 (N.D.N.Y. Mar. 10, 2020) ..........................................13

**TABLE OF AUTHORITIES**
(continued)

Page

*Lafayette-Boynton Apartment Corp. v. Lopez*,
  2022 WL 2316461 (S.D.N.Y. June 28, 2022) .........................................................20

*Lawsky v. Condor Cap. Corp.*,
  2015 WL 4470332 (S.D.N.Y. July 21, 2015) .......................................................6, 13

*McClelland v. Longhitano*,
  140 F. Supp. 2d 201 (N.D.N.Y. 2001) ...................................................................20

*Nat'l P'ship Inv. Corp. v. Nat'l Hous. Devel. Corp.*,
  153 F.3d 1289 (11th Cir. 1998) ..............................................................................13

*New Life Ventures, Inc. v. Locke Lord LLP*,
  2019 WL 13212632 (E.D. Tex. Sept. 27, 2019) ..................................................2, 12

*Nowak v. Ironworkers Loc. 6 Pension Fund*,
  81 F.3d 1182 (2d Cir. 1996)....................................................................................20

*Port Auth. of N.Y. & N.J. v. Allianz Ins. Co.*,
  443 F. Supp. 2d 548 (S.D.N.Y. 2006).....................................................................20

*Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP*,
  2012 WL 4378058 (S.D.N.Y. Sept. 25, 2012)..............................................3, 10, 17

*Sovereign Bank, N.A. v. Lee*,
  968 F. Supp. 2d 515 (E.D.N.Y. 2013) .....................................................................20

*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002)...................................................................................................20

*Tantaros v. Fox News Network, LLC*,
  12 F.4th 135 (2d Cir. 2021) .......................................................2, 10, 11, 15, 17

**Statutes**

28 U.S.C. § 1367(a) .........................................................................................................4

28 U.S.C. § 1331..............................................................................................................1

28 U.S.C. § 1441(b)(2) ..................................................................................................10

Defendants DLA Piper LLP (US) ("DLA") and Caryn G. Schechtman (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the Motion to Remand filed by Plaintiff Link Motion Inc. ("Link Motion").

## PRELIMINARY STATEMENT

Removal was proper, and thus the motion to remand should be denied, because this Court has both federal question jurisdiction and supplemental jurisdiction over the action.  Either of those two jurisdictional hooks is sufficient to support removal on the unique facts on this case, whereby Link Motion seeks to have a state court second-guess decisions *already rendered* by this federal Court (and by the federal Receiver, acting in his official capacity as an officer of this Court), even though Link Motion's own attorneys have already filed the exact same claim (on a derivative basis) in this same federal Court.  Link Motion ignores all of the operative facts that distinguish this case from the ones on which they rely, for the obvious reason that the state court action exists *solely* because Link Motion seeks to sidestep the adverse rulings it has already received here—including this Court's (and the Receiver's) determination that this action never should have been filed in the first place.

*First*, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Link Motion's legal malpractice claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which [this Court] may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013).  The first two factors of this so-called *Grable-Gunn* test are plainly satisfied here, given that, as Link Motion concedes, it will need to prove that this Court would not have appointed the Receiver if Defendants had raised certain federal issues in the underlying

Securities Action.[1]  Those federal issues are therefore "necessarily raised" and "actually disputed" in this malpractice action.

The third *Grable-Gunn* factor, substantiality, is also easily satisfied, as Link Motion's claim constitutes an improper collateral attack on multiple decisions actually rendered by this Court or actually made by the Court-appointed Receiver—including the Receiver's decision not to bring this action, this Court's jurisdictional rulings in the Securities Action, and this Court's decision that Link Motion properly bore the costs of the receivership.  For instance, central to Link Motion's causation theory in this malpractice action is an argument that Defendants should have realized that the plaintiff in the Securities Action lacked standing to seek—and, therefore, this Court lacked jurisdiction to grant—the Provisional Equitable Relief.  But, unlike in a typical malpractice case that asks what *might have* happened if particular arguments had hypothetically been raised in the past, here those exact standing issues *have already been addressed*—and resolved against Link Motion—by both this Court and Magistrate Judge Freeman.  *See Baliga v. Link Motion Inc.*, 2022 WL 3699339, at *5 (S.D.N.Y. Aug. 25, 2022); *Baliga v. Link Motion Inc.*, 2022 WL 2531535, at *10 (S.D.N.Y. Mar. 9, 2022).  Because Link Motion "seeks, under the guise of state law, what it has twice been denied under the federal law," *New Life Ventures, Inc. v. Locke Lord LLP*, 2019 WL 13212632, at *3 (E.D. Tex. Sept. 27, 2019), the federal issues raised in the malpractice claim are "important not solely to the parties in the immediate case but also to the federal system as a whole," *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 145 (2d Cir. 2021) (citation and internal quotation marks omitted).

As to the fourth *Grable-Gunn* factor, this Court's exercise of federal jurisdiction here will not do any violence to the balance of federal and state interests inherent in our nation's federalist

---

[1]   *Baliga v. Link Motion, Inc.*, Case No. 1:18-cv-11642 (S.D.N.Y.).

structure.  Indeed, Link Motion's attorneys already filed the very same malpractice claim in this

very Court, with a Link Motion shareholder named as the derivative plaintiff (on behalf of the

Company) in that existing suit.  By contrast, run-of-the-mill malpractice actions addressing

"hypothetical" federal issues will remain in state court.  That is, the "floodgates" to federal court

will remain firmly closed, preserving the "normal currents of litigation," except in cases like this

one that present specific (and substantial) federal issues that properly confer federal jurisdiction.

*Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP*, 2012 WL 4378058, at *7 (S.D.N.Y. Sept.

25, 2012) (citation and internal quotation marks omitted).

    In its remand motion, Link Motion contends that the federal issues are not "substantial"

and misleadingly suggests that Defendants seek to upend the federal-state balance by "barring"

all securities-related malpractice claims from state court.  Those arguments are rooted in

fundamental mischaracterizations of both the Supreme Court's holding in *Gunn* and the facts and

issues in this case.

    Specifically, Link Motion erroneously suggests that *Gunn* precludes removal of *any* state

law malpractice claim, when, in fact, the Supreme Court's analysis in *Gunn* was expressly case-

specific.  *See Gunn*, 568 U.S. at 264 (explaining that "something more, demonstrating that the

question is significant to the federal system as a whole," was "missing here").  Moreover, Link

Motion concedes that this Court will need to maintain some continuing supervisory role over the

malpractice action regardless of how this motion is resolved, proposing that the Court do so by

injecting itself *into* parallel state court proceedings—*e.g.*, by restricting Link Motion's ability to

settle or dismiss the state court action.  Mot. at 7.  But such federal intervention in a state court

proceeding would be far more disruptive to principles of comity and federalism than would be a

straightforward exercise of federal jurisdiction over the uniquely substantial federal issues present here.

*Second*, this Court has supplemental jurisdiction over Link Motion's malpractice action under 28 U.S.C. § 1367(a) because "the facts underlying" this case and the Securities Action *currently pending* before this Court "substantially overlap[]," and *that* "federal claim [the Securities Action] necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation omitted).  Defendants acknowledge that supplemental jurisdiction typically does not provide an independent basis for removal, but the circumstances here are different.

Specifically, whereas supplemental jurisdiction typically extends to individual state law *claims* asserted alongside federal claims in a single action, *Achtman* held that supplemental jurisdiction also allows entire *actions* to be filed in federal court in the first instance, even if those actions assert purely state law claims.  *See id.* at 334-35.  And because "[t]he propriety of removal . . . depends on whether the case originally could have been filed in federal court," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997), removal here is proper in light of this Court's supplemental jurisdiction over the *entire* malpractice action.  None of the cases on which Link Motion relies grappled with this particular argument rooted in *Achtman*, and Link Motion's erroneous fallback position—that there is no supplemental jurisdiction at all—is belied by its admission that the key events at issue in the malpractice action all arose *during the Securities Action itself*.

For these two independent reasons, Link Motion's motion to remand should be denied.

## BACKGROUND

On September 12, 2022, Link Motion filed a Summons and Complaint and Demand for Jury Trial in the Supreme Court of the State of New York, New York County (Index No. 653322/2022) (the "Malpractice Action").  *See* Dkt. No. 1-1 ("Malpractice Compl.").  The Malpractice Action purports to bring a New York state law claim for legal malpractice arising out of the federal securities action captioned *Baliga v. Link Motion, Inc.*, Case No. 1:18-cv-11642 (S.D.N.Y.) (the "Securities Action"), which has been pending before this Court since December 2018.

In the Malpractice Action, Link Motion asserts that Defendants engaged in malpractice during the brief period during which DLA assisted Link Motion in the Securities Action.  The plaintiff in the Securities Action, Wayne Baliga ("Baliga"), had asserted securities claims arising under Section 10(b) of the Securities and Exchange Act of 1934, as well as various state law claims.  Link Motion claims that Defendants allegedly failed to alert Link Motion to a potential defense—specifically, that Baliga "lacked standing" to assert his derivative claims because he was a holder of American Depository Shares and "not a registered shareholder"—and that Defendants allegedly "fail[ed] to recognize that [the] securities claims otherwise failed to support [a] request for . . . Provisional Equitable Relief," including the appointment of a receiver, in the Securities Action.  Malpractice Compl. ¶¶ 1, 4, 26-70, 78.

Baliga originally filed the Securities Action on a derivative basis and immediately sought preliminary injunctive relief and the appointment of a receiver (the "Provisional Equitable Relief").  *See* Securities Action Dkt. No. 1; Securities Action Dkt. No. 7.  The Court issued an Order that, among other things, appointed a temporary receiver who would—in his official capacity as an officer of the Court—"assume full control of the Company," commence and

control "any action" brought "in the name of the Company," and maintain control over Link

Motion's attorney-client privileges.  Securities Action Dkt. No. 26 § II.2(b), (e); *see Citibank,*

*N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) (explaining that a receiver is "an

officer of the court" whose "authority is wholly determined by the order of the appointing

court"); *Lawsky v. Condor Cap. Corp.*, 2015 WL 4470332, at *11 (S.D.N.Y. July 21, 2015)

("The Receiver acts only as an agent of this Court . . . .").  The defendants in the Securities

Action were directed not to "interfere with the Receiver's performance of his duties under this

Order."  Securities Action Dkt. No. 26 § II.4.

     Link Motion, its affiliates, and their joint counsel here immediately commenced efforts to

attack the Court's Order appointing the Receiver.  Those efforts were unsuccessful.

Nevertheless, Link Motion now seeks to relitigate them in the Malpractice Action.

     For instance, the Malpractice Action repeatedly suggests that this Court would not have

appointed the Receiver but-for the fact that Defendants allegedly consented to the Provisional

Equitable Relief without proper authorization from Link Motion.  Malpractice Compl. ¶¶ 46, 59-

60, 64, 78(g).  The record in the Securities Action proves otherwise.  Specifically, Dr. Vincent

Shi, Link Motion's former chairman and one of the defendants in the Securities Action, raised

these same arguments on Link Motion's behalf—and they were squarely rejected by this Court.

*See Baliga v. Link Motion Inc.*, 385 F. Supp. 3d 212, 222 (S.D.N.Y. 2019).[2]  And although the

Court dismissed Baliga's security fraud claims for failure to plead the purchase or sale of Link

Motion American Depository Shares, the Court observed that there was "ample evidence" of

---

[2]    The Court held that, questions of consent aside, Baliga's submissions were "sufficient to
show that the appointment of the Temporary Receiver was necessary to protect against . . .
the imminent danger of the property being lost," as the evidence reflected "precisely the kind
of actions that warrant the appointment of a receiver."  *Baliga*, 385 F. Supp. 3d at 222
(citation and internal quotation marks omitted).

such transactions and therefore granted Baliga leave to amend to cure that technical pleading defect, *id.* at 221, which Baliga later did.

Similarly, although the Malpractice Action alleges that this Court would not (and could not) have appointed the Receiver if DLA had challenged Baliga's standing to seek that relief, subsequent judicial rulings in the Securities Action again prove otherwise.  More than a year and a half after DLA withdrew from the Securities Action, Baliga amended his pleadings in October 2020 to withdraw the derivative claims and replace them with direct claims against Link Motion. *See* Securities Action Dkt. No. 166.  Shi thereafter moved this Court for an Order declaring that the receivership was void *ab initio*, making the same jurisdictional arguments now raised in the Malpractice Action.  *See* Securities Action Dkt. No. 227; Securities Action Dkt. No. 230 at 16; *see also* Malpractice Compl. ¶¶ 4, 18-24, 27, 29, 31, 33, 41, 78.  Shi also asked the Court to "order Baliga to bear all of the costs of the receivership."  *Baliga*, 2022 WL 2531535, at *5.

Magistrate Judge Freeman and this Court each rejected Shi's arguments and held, unequivocally, both that Baliga had standing to seek the Provisional Equitable Relief and that the Court therefore had subject matter jurisdiction to grant it.[3]  Magistrate Judge Freeman further

---

[3]   Specifically, Magistrate Judge Freeman held that, "even though it appears that Shi is correct that Baliga lacked standing to bring certain of his initial claims (specifically, his claims for breach of fiduciary duty and unjust enrichment), ultimately, the Court need not reach that issue here, as, even if Baliga lacked standing to assert his state common-law claims, he at least had standing to assert his federal securities claims, thereby providing the Court with subject-matter jurisdiction to act."  *Baliga*, 2022 WL 2531535, at *10.  In adopting that Report and Recommendation in full, this Court "agree[d] with Magistrate Judge Freeman's thorough reasoning that Baliga had standing to bring his derivative securities claims, and that the Court therefore possessed subject matter jurisdiction over this matter."  *Baliga*, 2022 WL 3699339, at *5.

recommended—and this Court again agreed—that Link Motion, not Baliga, should bear the costs of the receivership through the date on which Baliga withdrew his derivative claims.[4]

Meanwhile, in response to requests from the parties behind this lawsuit, "the Receiver refused multiple times" to sue Defendants for legal malpractice.  Malpractice Compl. ¶ 72. Seeking to sidestep the Receiver's decision, a purported shareholder of Link Motion—China AI Capital Limited ("China AI")—instead brought that claim on a derivative basis in this Court. *See China AI Capital Ltd. v. DLA Piper LLP (US)*, No. 21-cv-10911 (S.D.N.Y.) (the "China AI Action").  In doing so, China AI acknowledged that, "[b]ecause the Receiver has not yet been discharged, the Board of Directors of the Company has no authority to decide to take legal action on behalf of the Company."  China AI Action Dkt. No. 1 ¶ 100.  Yet the China AI Action, led by Shi's conflicted lawyers (who also brought this action purportedly on behalf of yet another client, Link Motion), is nearly identical to the Malpractice Action that Link Motion now seeks to assert directly in state court pursuant to this remand motion.

Specifically, following an Order granting DLA's request to file a motion to dismiss on the foregoing grounds, and this Court's Order in the Securities Action adopting Magistrate Judge Freeman's Report and Recommendation, these same Link Motion constituencies purportedly convened a secret Board meeting in China to orchestrate a conjured direct claim by Link Motion against DLA.  They did so even though both the Securities Action and the China AI Action remain pending before this Court, and even though the Receiver, who has refused to bring a claim against DLA, has not been discharged from his duties in control of Link Motion.  As a

---

[4]   *See Baliga*, 2022 WL 2531535, at *19 ("recommend[ing] that the Company be required to pay the reasonable costs incurred by the Receiver in the performance of the duties duly authorized by the Court up to October 5, 2020 (the date when Baliga filed his Second Amended Complaint)"); *Baliga*, 2022 WL 3699339, at *6-7 (overruling Shi's objection on this issue).

result, having again retained the same counsel who represent both Shi and China AI, Link Motion filed this copycat lawsuit against Defendants in New York Supreme Court—raising the same arguments regarding standing and costs that this Court already rejected.  Defendants therefore removed the case and requested that it be assigned to this Court as "related" to the Securities Action.  *See* Dkt. No. 1 ("Notice of Removal") ¶ 17.

Following removal, the parties debated whether Link Motion had violated this Court's Order that only the Receiver may commence lawsuits on the Company's behalf.  In two Orders issued in October 2022, the Court agreed with Defendants that Link Motion had "violate[d] orders this Court issued in [the Securities Action]" and ordered that the Board "not convene and vote to take any action not directed by the court-appointed receiver," while clarifying merely that Link Motion was not required to voluntarily dismiss the Malpractice Action.  *See* Securities Action Dkt. No. 365 at 12; Dkt. No. 9.  In those same Orders, the Court denied two requests to stay the Malpractice Action by the Shi/China AI/Link Motion axis for various reasons, "including because the malpractice suit ha[d] already been removed from state court, ha[d] been formally related to *Baliga*, and is pending before the Court."  Securities Action Dkt. No. 365 at 11-12; *see also* Dkt. No. 9.  Link Motion then moved to remand.  Dkt. No. 18.

<u>**ARGUMENT**</u>

I.     **Removal Was Proper Because The Court Has Federal "Arising Under" Jurisdiction Over This Action.**

Suits alleging state law causes of action "arise under" federal law if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  Thus, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial,

and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "The *Grable-Gunn* test reflects the commonsense notion that a federal court ought to be able to hear state law claims that turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Tantaros*, 12 F.4th at 141 (citation omitted). The malpractice claim here readily meets this test, and Link Motion's arguments to the contrary—which focus exclusively on the third and fourth factors—completely miss the mark.[5]

## A. It Is Undisputed That Link Motion's Malpractice Claim "Necessarily Raises" Federal Issues.

Link Motion's malpractice claim "necessarily raises" federal issues. "This element [of the *Gunn-Grable* test] is met where the plaintiff's right to relief necessarily depends on resolution of a question of federal law." *Tantaros*, 12 F.4th at 141 (citation, alteration, and internal quotation marks omitted).

Here, to prevail on its legal malpractice claim, Link Motion "must prove—as an element of its *prima facie* case—that it suffered a compensable loss that was proximately caused by [DLA's alleged] breach of its duty." *Reserve Mgmt.*, 2012 WL 4378058, at *6. That is, Link Motion must show that, "but for" DLA's alleged negligence, "what would have been a favorable outcome was an unfavorable outcome." *Flutie Bros. v. Hayes*, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (citation omitted); *see also Gunn*, 568 U.S. at 259 (discussing this same "causation element" of a legal malpractice claim under Texas law, and explaining that it

---

[5]   Because there is federal question jurisdiction in this case, Link Motion's discussion of diversity jurisdiction—including its legal and factual arguments (Mot. at 1-2, 4-5) and its attorney declaration regarding the timing of service (Dkt. No. 19)—is beside the point. *See* 28 U.S.C. § 1441(b)(2) (addressing effect of service in cases that are "removable solely on the basis of [diversity] jurisdiction").

"requires a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different").

Link Motion's ability to prove this causation element will therefore turn on whether it can prove—counterfactually, and contrary to this Court's express rulings—that Baliga "lacked standing" to seek the Provisional Equitable Relief, such that this Court would have denied that relief for lack of jurisdiction, and that "Baliga's securities claims otherwise failed to support his request for the Provisional Equitable Relief." *See* Malpractice Compl. ¶¶ 4, 18-24, 27, 29, 31, 33, 41, 78. Those federal issues are "necessarily raised." Indeed, Link Motion concedes as much in its Motion. *See* Dkt. No. 20 ("Mot.") at 5 n.4.

**B.    It Is Also Undisputed That The Federal Issues Raised In This Case Are "Actually Disputed."**

The federal issues raised in Link Motion's malpractice claim likewise are "actually disputed." "[I]ndeed, on the merits," Link Motion's spurious causation theory—which, as discussed, necessarily raises federal issues and ignores express rulings of this Court—"is [a] central point of dispute." *Gunn*, 568 U.S. at 259. Link Motion concedes this element of the *Grable-Gunn* test as well. *See* Mot. at 5 n.4.

**C.    The Federal Issues Here Are "Substantial" Because Link Motion's Malpractice Claim Represents A Collateral Attack On Multiple Orders Of This Court And On Decisions By The Court-Appointed Receiver.**

The third prong of the *Grable-Gunn* test asks whether the federal issues are "substantial—that is, important not solely to the parties in the immediate case but also to the federal system as a whole." *Tantaros*, 12 F.4th at 145 (citation and internal quotation marks omitted). "An issue tends to be substantial if it is a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous similar cases." *Id.* (citation, alternation, and internal quotation marks omitted).

11

Here, the federal issues raised in the Malpractice Action plainly fit the bill.  For one thing, Link Motion's malpractice claim "is little more than a collateral attack on this Court's prior . . . decision" that Baliga had standing to seek the Provisional Equitable Relief.  *New Life Ventures*, 2019 WL 13212632, at *3; *see Baliga*, 2022 WL 3699339, at *5 (adopting Magistrate Judge Freeman's Report and Recommendation finding that Baliga had standing to assert federal securities claims and that the Order appointing the Receiver was not void *ab initio*); Notice of Removal ¶ 14; Malpractice Compl. ¶¶ 4, 18-24, 27, 29, 31, 33, 41, 78 (alleging that the Receiver would not have been appointed if DLA had argued that "Baliga lacked standing to assert derivative claims under Cayman Islands law" and "Baliga's securities claims otherwise failed to support his request for the Provisional Equitable Relief").

Moreover, on the basis of those jurisdictional arguments that this Court has already rejected, Link Motion seeks to recover "[t]he costs and expenses associated with the Receiver and the receivership," which allegedly "would not have [been] incurred but for Defendants' legal malpractice and entry of the preliminary injunction and appointment of the Receiver." Malpractice Compl. ¶ 69(b); *see* Notice of Removal ¶ 10.  But, again, this Court already held that "the Receiver was duly appointed up to October 5, 2020," such that Link Motion properly bore those costs through that date.  *Baliga*, 2022 WL 3699339, at *6 (adopting Magistrate Judge Freeman's Report and Recommendation on this issue).

Thus, on each of these issues, Link Motion "now seeks, under the guise of state law, what it has twice been denied under the federal law."  *New Life Ventures*, 2019 WL 13212632, at *3 (finding federal "arising under" jurisdiction where, after a defendant's motion for attorneys' fees in a patent infringement case was denied, he commenced a state court malicious prosecution claim to secure that same relief from the plaintiff and his attorneys).  That is, dissatisfied with

Magistrate Judge Freeman's and this Court's rulings that Baliga had standing to seek—and this Court thus had subject matter jurisdiction to grant—the Provisional Equitable Relief irrespective of his alleged standing to assert his state law claims, Link Motion now hopes that a state court will disagree, overrule this Court, and shift the costs of the Receiver to DLA.

Link Motion's causation theory also implicates the authority of the Receiver, serving as an officer of this Court in connection with the Securities Action, to have taken certain actions that Link Motion now challenges as harmful to the Company. *See, e.g.*, Malpractice Compl. ¶ 69; Notice of Removal ¶ 13. Indeed, by Link Motion's own admission, "the Receiver refused multiple times . . . to assert the Company's legal malpractice claim against Defendants." Malpractice Compl. ¶ 72. And yet, although the Receiver remains in place, Link Motion purports to have brought that action anyway, without the Receiver's approval. Thus, in addition to collaterally attacking this Court's prior jurisdictional determinations, the Malpractice Action itself represents a collateral attack on (and an attempt to evade) determinations made by the Receiver in his role "as an agent of this Court." *Lawsky*, 2015 WL 4470332, at *11; *see also Citibank*, 839 F.2d at 98. There is plainly a substantial federal interest in ensuring that state law cannot be used to undermine, evade, or otherwise attack duly authorized actions and decisions of a federal receiver acting in his official capacity. *See, e.g.*, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Devel. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (noting "the primacy of federal law in the practice of federal receiverships"); *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, 2020 WL 1157650, at *4 (N.D.N.Y. Mar. 10, 2020) ("Federal law alone governs a federal receivership."); *see also Can. Life Assur. Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009) ("Not only does [Federal] Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform

13

administration of receiverships in accordance with the historical practice in federal courts." (citation and internal quotation marks omitted)).

Further still, there is a substantial federal interest here given this Court's greater familiarity with its own Orders, the prior (and related) proceedings, and the various federal issues that Link Motion concedes will necessarily be decided in the course of litigating the Malpractice Action. Although "the possibility that a state court will incorrectly resolve a state claim is not, *by itself*, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law," "a similar interest was *among* those [the Supreme Court] considered in *Grable*." *Gunn*, 568 U.S. at 263 (emphasis added). So too here, where "the federal courts' greater familiarity with [federal securities] law" (*id.*) is one of many factors creating a substantial federal interest in the issues Link Motion seeks to litigate.

The posture of this case is therefore wholly unlike *Gunn*, the "reasoning" of which Link Motion erroneously seeks to "appl[y] here." Mot. at 6. Whereas *Gunn* involved a run-of-the-mill "state court case-within-a-case inquiry" that "asks what would have happened in the prior federal proceeding if a particular argument had been made," there is nothing "hypothetical" about the inquiry here. *Gunn*, 568 U.S. at 261-62. To the contrary, and as discussed, the core standing question has already been asked and answered—twice—making clear that DLA's having raised those arguments would *not* have altered the outcome in the Securities Action. *See Baliga*, 2022 WL 2531535, at *14 ("[E]ven assuming that, when he commenced this action, Baliga lacked standing to assert derivative state-law claims, he still had standing to assert his derivative federal securities claims. Accordingly, to the extent Shi is arguing in his motion that the Preliminary Injunction and Receivership Order should be vacated *ab initio* because the Court was *without power* to have issued it, the motion should be denied." (emphasis in original));

*Baliga*, 2022 WL 3699339, at *5.  There is undoubtedly a substantial federal interest in avoiding

such collateral attacks on duly issued court Orders, and in preventing state courts from second-

guessing federal courts' determinations as to the scope of their own federal jurisdiction.  "Being

neither fact-bound nor situation-specific, the issue will inform all future [state law malpractice]

claims" that seek to second-guess federal issues *already actually decided* by the federal court

presiding over the underlying action.  *Tantaros*, 12 F.4th at 146 (citation, alteration, footnote,

and internal quotation marks omitted).

Link Motion's request for remand ignores this Court's Orders and fundamentally

mischaracterizes *Gunn*.  Specifically, Link Motion contends that *Gunn* held "[f]ederal courts do

not have 'federal question jurisdiction' over state law malpractice actions, *no matter the nature*

*of the underlying matter*."  Mot. at 1 (emphasis added).  The Supreme Court said no such thing.

Rather, the Court observed that it was "comfortable concluding that state legal malpractice

claims *based on underlying patent matters* will rarely, if ever, arise under federal patent law for

purposes of § 1338(a)," because "*those cases* are by their nature unlikely to have the sort of

significance for the federal system necessary to establish jurisdiction."  *Gunn*, 568 U.S. at 258-59

(emphasis added).

Thus, contrary to Link Motion's presentation of the case, the analysis in *Gunn* was

*specifically and expressly* tied to the "nature" of generic "state legal malpractice claims based on

underlying patent matters" in particular.  *Id.*  And even assuming *arguendo* that *Gunn*'s analysis

can properly be *analogized* to this case, the most the Supreme Court said is that federal courts

will "rarely, if ever," have jurisdiction over patent-based malpractice claims.  *Id.* at 258.

That is a far cry from holding that federal courts can *never* have jurisdiction over *any*

malpractice claim.  Indeed, *Gunn* was explicit that its ruling was case-specific, rather than

announcing a categorical rule:  "[S]omething more, demonstrating that the question is significant to the federal system as a whole, is needed.  That is missing here."  *Gunn*, 568 U.S. at 264.  That case-specific approach is consistent with the Supreme Court's longstanding reluctance to "stat[e] a single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims."  *Grable*, 545 U.S. at 314 (citation omitted).  As discussed, the "missing" element in *Gunn* is present here, where Link Motion does not ask the state court to examine "hypothetical" federal issues, but instead asks that court to second-guess decisions that this Court has actually rendered.

Link Motion also asserts that "[t]he appointment of a receiver in federal court does not require that all of Link Motion's legal actions be brought in the same Court in which the receiver was appointed."  Mot. at 1.  This, again, is a strawman.  The substantial federal interest here exists not because the receiver was *appointed*—or because of the "mere pendency" of the Securities Action (*id.* at 7)—but rather because the malpractice claim puts the Receiver's actions squarely at issue, asks a state court to overrule them, and seeks to recover damages based thereon.[6]

At the end of the day, Link Motion cannot avoid the fact that the Malpractice Action asks a state court to second-guess numerous *actual* decisions by this Court and the Court-appointed Receiver.  That unique feature of this case supplies the extra "something" that was lacking in *Gunn*, and in doing so it renders the federal issues here "substantial."

---

[6]   In the case on which Link Motion relies, the federal issues invoked as a basis for remand were "not *necessary* to any of petitioners' claims for relief."  *Cal. Med. Ass'n v. Shewry*, 2008 WL 11338088, at *5 (C.D. Cal. June 23, 2008) (emphasis added).  By contrast, as discussed, Link Motion has conceded that element here.

**D.      This Court Can Resolve The Federal Issues Raised By The Malpractice Claim Without Disrupting The Federal-State Balance.**

For the same reasons discussed in the preceding section, this Court can exercise federal jurisdiction in this case without disrupting the federal-state balance. *See Gunn*, 568 U.S. at 264 (explaining that the Court's balancing analysis in that case "follow[ed] from the foregoing" substantiality analysis). While removal here is proper in light of the substantial nature of the federal issues raised in *this particular* Malpractice Action, run-of-the-mill legal malpractice cases—*i.e.*, cases without those unique federal implications—will continue to be litigated in state court. As a result, "there is no reason to believe that the exercise of federal jurisdiction here would open the floodgates to federal courts or otherwise interfere with the normal currents of litigation." *Reserve Mgmt.*, 2012 WL 4378058, at *7 (citation and internal quotation marks omitted); *see also Tantaros*, 12 F.4th at 147 ("[E]xercising federal jurisdiction over this case will not divert many cases from state court."). Conversely, it would do immense violence to the federal-state balance if state courts could second-guess and effectively overrule *actual* (as contrasted with hypothetical) federal court rulings due to a conjured legal malpractice claim and force attorneys to bear the costs of actions undertaken by a federally appointed receiver in the process.

Tellingly, Link Motion offers no independent analysis of this factor. Instead, it simply quotes *Gunn*'s statements about States' interests in regulating attorney conduct, without *any* argument purporting to balance those interests against the countervailing federal interests present here. Needless to say, simply *identifying* a purported State interest is not dispositive of the balancing inquiry. As discussed, removal here is not based on the premise that Congress has "bar[red]" legal malpractice claims from state court "simply because they require resolution of a hypothetical [federal] issue." Mot. at 6 (alterations in original) (quoting *Gunn*, 568 U.S. at 264).

Rather, removal is proper here because the *specific* federal issues in this *specific* legal malpractice claim are substantial and thus properly heard by this federal Court.

Link Motion, on the other hand, *would* upset the federal-state balance by categorically barring *all* legal malpractice claims from federal court, as Link Motion's repeated mischaracterizations of *Gunn*'s holding make plain.  Indeed, Link Motion concedes that this Court retains an "interest in supervising Link Motion pending discharge of the Receiver."  Mot. at 7.  Why Link Motion thinks it would be less disruptive to the federalist structure for this Court to carry out that supervisory role by injecting itself into parallel state court proceedings by "placing reasonable limitations on Link Motion's ability to settle or dispose of the legal malpractice claim" (*id.*)—rather than by retaining federal jurisdiction over a case that is a direct copycat of the pending China AI Action that Link Motion's own lawyers filed in this Court as well (derivatively, but still on behalf of the Company)—is left to speculation.

For all of these reasons, this Court has federal jurisdiction over the Malpractice Action, removal was proper, and the motion to remand should be denied.

## II.   Removal Was Also Proper For The Independent Reason That This Court Has Supplemental Jurisdiction Over This Action.

A federal court may exercise supplemental jurisdiction over state law claims—based on the pendency of related federal claims—if "the facts underlying the federal and state claims substantially overlap[] or the federal claim necessarily [brings] the facts underlying the state claim before the court," such that "two disputes arise from a common nucleus of operative fact." *Achtman*, 464 F.3d at 335 (citation, alterations, and internal quotation marks omitted).

Such is the case here, where all of the events at issue in the Malpractice Action occurred within the Securities Action itself.  This Court is "thus well-placed to consider the issues that would arise in the malpractice action," including "whether [DLA] asserted all appropriate

[defenses]," *id.* at 336, and whether the Court "would not have granted the Provisional Equitable Relief" (Malpractice Compl. ¶ 82), including the appointment of the Receiver. That is, the Court has "supplemental jurisdiction over the malpractice claim[] because it has original jurisdiction over the underlying [S]ecurities [A]ction." *Achtman*, 464 F.3d at 334-35 (citation, alteration, and internal quotation marks omitted). Removal was therefore proper for this independent reason. *See* Notice of Removal ¶¶ 4, 15.

Defendants recognize that, in most instances, supplemental jurisdiction will not provide a basis for removal. However, *Achtman* compels a different result under the unique circumstances of this case. That is because "[t]he propriety of removal . . . depends on whether the case originally could have been filed in federal court." *City of Chicago*, 522 U.S. at 163.

*Achtman* expressly holds that supplemental jurisdiction is *not* limited to state law claims that are filed as part of the same action as a related federal claim. *Achtman*, 464 F.3d at 335. Rather, a federal court may properly assert supplemental jurisdiction over entire state law *actions*, as long as the state law action itself is sufficiently related to a separate, pending federal action. *See id.* The clear implication of *Achtman*'s holding is that, under those circumstances, the distinction between original and supplemental jurisdiction falls away, such that a purely state law action can be filed in federal court—despite the absence of *any* federal questions or completely diverse parties—as long as there is a separate federal action pending that shares a common nucleus of operative fact. And if the state law action "could have been filed in federal court" in the first instance, removal must be proper. *City of Chicago*, 522 U.S. at 163.

To the extent Link Motion views this as "a judicial exception" to the removal statute (Mot. at 9), their quarrel is with *Achtman*, not with Defendants. Link Motion observes that *Achtman* itself "did not involve removal" (*id.* at 8); but that misses the point—*i.e.*, the propriety

of removal here is a necessary consequence of *Achtman*'s rule concerning supplemental

jurisdiction over entire actions.  Tellingly, unlike *Achtman*, none of the cases cited by Link

Motion involved a legal malpractice claim, and none of them engaged with the unique

jurisdictional questions that an *Achtman*-style case like this one presents.[7]

Link Motion's fallback argument—that there is no basis for supplemental jurisdiction at

all—defies reason.  In contending that there is no "substantial overlap" between the Securities

Action and the Malpractice Action, Link Motion cites exclusively to *Absolute Activist Master*

*Value Fund, Ltd. v. Ewing*, 2014 WL 3600409 (S.D.N.Y. July 11, 2014), a case that bears no

resemblance to this one—or to *Achtman*.  In *Absolute Activist*, the plaintiffs asserted securities

fraud claims against various entities and individuals, while the counterclaimant sought to

interpose unrelated state law claims to recover a bonus that the plaintiff's parent company

---

[7]    Six of those cases predated *Achtman*; two of those six are non-controlling decisions from
outside this Circuit; two others addressed distinct legal questions; and one relied at least in
part on the now-defunct distinction between actions and claims for purposes of supplemental
jurisdiction.  *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) (considering
the distinct question whether the All Writs Act, "alone or in combination with the existence
of ancillary jurisdiction in a federal court," provides a basis for removal); *Nowak v.
Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (discussing the
separate rule that, when a federal court dismisses federal claims for lack of subject matter
jurisdiction (rather than failure to state a claim), the court cannot then retain supplemental
jurisdiction over state law claims asserted within the same action); *Port Auth. of N.Y. & N.J.
v. Allianz Ins. Co.*, 443 F. Supp. 2d 548, 555 (S.D.N.Y. 2006) (decided a month before
*Achtman*); *McClelland v. Longhitano*, 140 F. Supp. 2d 201, 203 (N.D.N.Y. 2001)
("distinguish[ing] between actions and claims" in a case where the defendants were
attempting to manipulate the removal statute by filing *their own* federal claims and then
using that new lawsuit to "contrive federal jurisdiction" over pending state court
proceedings); *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065 (11th Cir. 2001); *Ahearn v.
Charter Twp. of Bloomfield*, 100 F.3d 451 (6th Cir. 1996).  And neither of the two cases that
post-date *Achtman* cited that Second Circuit decision or otherwise addressed the arguments
that Defendants raise here.  *See Lafayette-Boynton Apartment Corp. v. Lopez*, 2022 WL
2316461, at *3 (S.D.N.Y. June 28, 2022) (erroneously assuming that supplemental
jurisdiction is limited to "claims that are within the same civil action," without addressing
*Achtman*'s contrary holding (citation omitted)); *Sovereign Bank, N.A. v. Lee*, 968 F. Supp. 2d
515, 518 (E.D.N.Y. 2013).

allegedly wrongfully withheld when he departed the company.  *See id.* at *1.  Although there

was no supplemental jurisdiction over those wholly disparate claims, the court *did* consider the

counterclaimant's contractual indemnification claim arising out of the underlying securities

claims.  *See id.* at *4-5.

Here, Link Motion *admits* that "[t]he facts relevant to Plaintiff's [malpractice] claim will

include (i) whether Defendants represented Plaintiff, (ii) whether there was a viable defense to

[the] underlying motion for provisional equitable relief (*e.g.*, lack of standing by the movant and

failure to state a cause of action in the operative complaint), and (iii) whether Defendants

adequately raised these defenses and arguments."  Mot. at 9.  But Link Motion ignores that all of

these events occurred *in the Securities Action*, bringing this case squarely into line with

*Achtman*—as even *Absolute Activist* recognized.  *See Absolute Activist*, 2014 WL 3600409, at *4

(distinguishing itself from *Achtman* on the basis that the malpractice claims in *Achtman* "arose

during the prosecution of [the underlying securities] claims"); *see also Achtman*, 464 F.3d at 336

(noting that supplemental jurisdiction exists even if "there would surely be some facts at issue in

the malpractice action that were not directly implicated in the [underlying] securities litigation

itself").[8]

Thus, as in *Achtman*, the Court's "familiarity with the amount and quality of work

performed by [Defendants] would enormously facilitate rapid disposition of [the] dispute, while

a great deal of the record would have to be considered anew and relitigated in a state court

unfamiliar with the proceedings."  *Achtman*, 464 F.3d at 336.  Indeed, a virtually identical

---

[8]    For the same reasons, even if there were no "substantial overlap" between the two actions,
      the Securities Action plainly "brought the facts underlying the state claim before the court."
      *Achtman*, 464 F.3d at 336 (citation omitted).  Link Motion recites this second half of the
      disjunctive standard for finding supplemental jurisdiction but then focuses entirely on
      substantial overlap.  *See* Mot. at 9.

action—also filed (derivatively) on behalf of Link Motion—is *already* pending in this Court. Removal was therefore proper for the alternative reason that this Court has supplemental jurisdiction over the malpractice claim, such that this action could have been filed in federal court in the first instance.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to remand should be denied.

Dated: Los Angeles, California
        November 14, 2022

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ *Kevin S. Rosen*_
        Kevin S. Rosen (*pro hac vice*)
        333 South Grand Avenue
        Los Angeles, CA 90071-3197
        Telephone: 213.229.7000
        KRosen@gibsondunn.com

        Nancy Hart
        Peter M. Wade
        200 Park Avenue
        New York, NY 10166-0193
        Telephone: 212.351.4000
        NHart@gibsondunn.com
        PWade@gibsondunn.com

        *Attorneys for Defendants DLA Piper*
        *LLP (US) and Caryn G. Schechtman*