```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/26/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------

LINK MOTION INC.,

                              Plaintiff,

                - against -

DLA PIPER LLP (US) and CARYN G.
SCHECHTMAN,

                              Defendants.

---------------------------------------

**22 Civ. 8313 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

    Plaintiff Link Motion Inc. ("LKM") originally filed this
action in New York State Supreme Court, New York County
("State Court"), alleging legal malpractice against
defendants Caryn G. Schechtman ("Schechtman") and the law
firm at which she is a partner, DLA Piper LLP (US) (together,
"DLA"). (<u>See</u> "Complaint" or "Compl.," Dkt. No. 1-1.) DLA
removed the action to this Court and promptly moved to
dismiss. Upon consideration of the submissions and applicable
legal authorities, and for the reasons stated below, the Court
finds that LKM's Complaint is time-barred. Accordingly, DLA's
motion to dismiss ("Motion" or "Mot.," Dkt. No. 7) the
Complaint is **GRANTED**, with prejudice.

## I.   <u>BACKGROUND</u>

A.   <u>FACTUAL BACKGROUND</u>[1]

The allegations made in the Complaint stem from the origins of another case pending before this Court, <u>Baliga v. Link Motion Inc.</u>, No. 18 Civ. 11642 (VM) (S.D.N.Y.) (the "<u>Baliga</u> Action"). That action was brought by plaintiff Wayne Baliga ("Baliga") and was initially styled as a verified shareholder derivative suit asserting various federal and state causes of action against LKM.

Well before the <u>Baliga</u> Action was filed, DLA had been engaged by LKM. That engagement was limited to DLA's provision of "general corporate advice as well as in connection with an issuance of Class B Shares." (Compl. ¶ 12.) DLA advised LKM on the Class B shares transaction in or around July 2018. After the shares were issued, LKM updated its records to reflect the new investors as registered shareholders of LKM. LKM alleges that DLA knew the identities of all registered shareholders, and that Baliga was not one of them.

Baliga filed his action on December 13, 2018. At that time, Baliga was represented by The Seiden Law Group ("SLG").

---

[1] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and explained in Section II, *infra.*

The event forming the crux of the relevant allegations in this legal malpractice suit occurred on or about the same day. Simultaneously with Baliga filing his complaint, he also moved this Court for emergency relief. SLG sent DLA copies of Baliga's complaint and indicated its intent to file an order for LKM to show cause why Robert W. Seiden, the managing partner of SLG -- i.e., the firm representing Baliga -- should not be appointed as receiver for LKM to prevent, among other things, further alleged "dissipation of [LKM] and its assets" and to "manage [LKM]'s operations." (Baliga Action, Dkt. No. 1 ¶¶ 36-37 ("Baliga Compl.").) Baliga's filing sought a temporary restraining order and a preliminary injunction along with its request for appointment of a receiver. In support of his requests, Baliga asserted that he was "currently and ha[d] at all material times of th[e Baliga Action] been a shareholder of LKM." (Compl. ¶ 17 (citing Baliga Compl. ¶ 4).) However, Baliga owned only American Depository Shares of LKM and, therefore, under the laws of the Cayman Islands, where LKM was registered, Baliga was only a beneficial owner, not a registered shareholder.

Responding to Baliga's motion, DLA advised LKM it would "send an associate" to appear before this Court. (Compl. ¶ 28.) The associate would advise the Court that "due to the time difference and language barriers," DLA had not received

instructions from LKM on whether it would oppose the relief Baliga sought. At the hearing, DLA did not argue that Baliga was not a registered shareholder and therefore did not have standing under Cayman Island's law to act derivatively for LKM or that there were other defects in Baliga's complaint for securities fraud. The Court entered the temporary restraining order ("TRO") as unopposed.

DLA, appearing through Schechtman, continued its limited appearance on behalf of LKM. On December 19, 2018, Baliga sought an extension of the TRO until the Court ruled on the appointment of a receiver. DLA emailed LKM the same day, advising them of Baliga's motion, but did not provide any other advice regarding avenues for opposing the requested relief. It is unclear whether LKM responded to DLA's email. Two days later, DLA signed a "Joint Letter" in the <u>Baliga</u> Action, consenting to the extension of the TRO.

On January 14, 2019, DLA sent another email to LKM regarding Baliga's pending motion for appointment of a receiver. LKM again alleges that DLA did not provide any advice or counsel on meritorious defenses to Baliga's requested relief. LKM did not, it appears, write back. And so, on January 19, 2019, DLA emailed LKM again stating: "if we do not hear back from you within 24 hours, DLA will ***<u>assume</u>*** that we have Link Motion's consent not to oppose the motion."

(Compl. ¶ 51 (emphasis in original).) DLA is alleged to not have provided any advice in this message nor did DLA advise as to the ramifications the appointment of a receiver could have on LKM's operations. LKM did not respond within 24 hours.

Two days later, on January 21, 2019, DLA signed a stipulation (the "Stipulation") in the Baliga Action that LKM did "not oppose the Preliminary Injunction." (Id. ¶ 59.) On February 1, 2019, this Court entered the Preliminary Injunction and an order appointing Robert W. Seiden (the "Receiver") as receiver (the "Receiver Order"). DLA did not seek, and the Court did not require, the posting of bond for the injunction under Federal Rule of Civil Procedure 65(c).

One month later, on March 1, 2019, the Court granted DLA's request to withdraw from the Baliga Action, ending DLA's representation of LKM in that action.

LKM asserts that DLA committed malpractice by failing to advise LKM of its meritorious defenses to Baliga's request, primarily that Baliga could not bring a derivative lawsuit under controlling Cayman Islands law, which limits such actions to only registered shareholders. LKM contends that had it been properly advised, it would have opposed Baliga's request for emergency relief and the Receiver would not have been appointed. LKM accuses DLA of acting without LKM's informed consent by signing the Stipulation on January 21,

2019. It additionally asserts that, had LKM been properly advised, it would have sought to move to dismiss the underlying action and oppose Baliga's requests.

The damages LKM asserts DLA is liable for stem from the Receiver's actions. The Receiver Order turned control of LKM over to the Receiver. This development allegedly came at significant monetary harm to LKM including those costs related to "litigation expenses"; "the costs and expenses associated with the Receiver and the receivership"; "the loss of gains and other benefits as a result of interruption to the Company's divestment of its legacy business segment," amounting to $180 million; and the dissipation of other cash and assets. (Compl. ¶ 69.)

B.   PROCEDURAL BACKGROUND

The Court limits its discussion of the procedural history of this litigation to only those mechanisms touching on the instant Motion.[2] After DLA removed the action from State Court, and pursuant to this Court's Individual Practices, Section II.B, DLA sent a pre-motion letter to LKM regarding DLA's intention to file a motion to dismiss. (See

---

[2] For a more thorough description of the procedural history, including the interplay between this suit, the Baliga Action, and the predecessor legal malpractice suit brought derivatively by an investor in LKM, China AI Capital Limited ("China AI"), the Court directs the reader's attention to its Decision and Order on LKM's motion for remand, a discussion that the Court incorporates by reference here. (See Dkt. No. 24.)

Dkt. No. 7.) Also pursuant to the Court's Individual Practices, LKM responded to DLA's pre-motion letter, opposing the grounds for such a motion. ("Opposition" or "Opp.," Dkt. No. 11.) LKM's letter included numerous exhibits. (Id.) DLA then sent a third letter advising the Court that the informal pre-motion letter practice had been unsuccessful in resolving the dispute short of motion practice and that DLA sought a pre-motion conference on their intended motion to dismiss. (See Dkt. Nos. 14, 21.)

While those letters were pending, LKM moved for remand of the action back to State Court. (See Dkt. Nos. 18-20.) The Court denied LKM's motion for remand and also DLA's request for a pre-motion conference, instead directing the parties to "notify the Court whether they consent[ed] to the Court deeming the pre-motion letters as a fully briefed motion and ruling on the basis of such letters, or whether the parties request[ed] supplemental or full briefing on DLA's proposed motion." (Dkt. No. 24 at 27.)

Before advising the Court of how they sought to proceed, LKM moved for reconsideration of the Court's remand decision. (See Dkt. Nos. 25-26.) The Court denied LKM's motion for reconsideration and again directed the parties to notify the Court of whether they consented to having the pre-motion letters treated as a fully briefed motion. (See Dkt. No. 27.)

The following day, in separate letters, both parties consented to treating the pre-motion letters as a fully briefed motion to dismiss and having the Court rule on the basis of those letters. (<u>See</u> Dkt. Nos. 28-29.)[3]

## II.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss, pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See id.</u> However, if the factual allegations sufficiently "raise a right to relief above the speculative level," then a court should not dismiss a complaint for failure to state a claim. <u>Twombly</u>, 550 U.S. at 555.

---

[3] <u>See</u> <u>Kapitalforeningen Lægernes Invest v. United Techs. Corp.</u>, 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming the district court's ruling deeming the exchange of letters as the motion itself); <u>see also</u> <u>Int'l Code Council, Inc. v. UpCodes Inc.</u>, 43 F.4th 46, 53-56 (2d Cir. 2022) (requiring district courts to afford parties notice before ruling on a dispositive motion on the basis of only the pre-motion letters).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation omitted). Courts may "[d]ismiss[] claims on statute of limitations grounds at the complaint stage . . . only if a complaint clearly shows the claim is out of time." Shak v. J.P. Morgan Chase & Co., 156 F. Supp. 3d 462, 474 (S.D.N.Y. 2016) (internal quotation marks and citation omitted); see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.") (alterations, internal quotation marks, and citation omitted).

### III. DISCUSSION

Resolution of this Motion on statute of limitations grounds is appropriate. The Court decides the Motion on those grounds alone and does not otherwise address the adequacy of LKM's pleadings. Accordingly, because LKM failed to timely bring this lawsuit against DLA, it must be dismissed.

In its Complaint, LKM devotes two paragraphs to allegations regarding the timeliness of their action. First, LKM asserts their claim against DLA, brought on September 12, 2022, is timely because of Executive Orders issued in New York ("E.O. 202.8") that tolled limitations periods for 228 days due to the COVID-19 pandemic. (See Compl. ¶ 71.) Second, LKM asserts its claims are timely "based on equitable tolling, as the Receiver refused multiple times while he was in control of the Company to assert the Company's legal malpractice claim against Defendants." (Id. ¶ 72.) LKM continues by implying -- albeit incorrectly[4] -- that it was only when this Court ordered discharge of the Receiver on August 25, 2022, that LKM could assert its claims against DLA. (See id.)

"Under New York law, the statute of limitations for a legal malpractice claim is three years." Anderson v. Greene, No. 14 Civ. 10249, 2016 WL 4367960, at *26 (S.D.N.Y. Aug. 10, 2016) (citing N.Y. C.P.L.R. § 214(6)). The parties do not dispute this point. Rather, they disagree as to (1) the date from which the limitations period runs, (2) the applicability

---

[4] After the issue regarding the LKM Board's decision to vote to bring this lawsuit was brought to the Court's attention, the Court sought briefing on whether that decision by the Board violated the Court's Order. After considering briefing on the issue, the Court found that LKM's decision to meet and vote to bring this action violated the Court's Orders as the Receiver still maintained control of LKM until its accounting was complete and approved by the Court. (See Baliga Action Dkt. No. 365.) Nonetheless, the Court found it proper to allow this action to continue. (See id., see also Dkt. No. 9 (clarifying its decision in the Baliga Action).)

of the E.O. 202.8 to these claims, and (3) whether equitable tolling pertains in these circumstances. The Court address the first two issues together.

    A.   <u>DATE OF ACCRUAL AND E.O. 202.8</u>

In a New York-based legal malpractice action, the cause of action does not accrue "on the date when the malpractice was discovered" but rather "on the date of the allegedly improper action." <u>Xie v. Lin</u>, No. 06 Civ. 142, 2007 WL 423806, at *3 (S.D.N.Y. Feb. 7, 2007); <u>see also</u> <u>Noskov v. Roth</u>, No. 19 Civ. 7431, 2020 WL 4041125, at *4 (S.D.N.Y. Jul. 17, 2020). DLA asserts that the date of accrual was, at the very latest, January 21, 2019, the date that DLA signed the Stipulation that LKM would not oppose Baliga's requested relief. (<u>See</u> Mot. at 2.) In rebuttal, LKM agrees that, generally, a claim for legal malpractice accrues on the date the alleged malpractice is committed but is "tolled during the period of continuous representation." (Opp. at 1.) Thus, LKM argues that the limitations period did not begin to run until March 1, 2019, the date that the Court granted DLA's request to withdraw as counsel.

LKM's argument references the continuous representation doctrine. The purpose of the continuous representation doctrine is to recognize "that a person seeking professional assistance has a right to repose confidence in the

professional's ability and good faith, and realistically
cannot be expected to question and assess the techniques
employed or manner in which the services are rendered." MIG,
Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P., 710
F. Supp. 2d 518, 525 (S.D.N.Y. 2010) (quoting Shumsky v.
Eisenstein, 96 N.Y.2d 164, 167 (N.Y. 2001)). Where the
doctrine applies, "the three-year statute of limitations will
not begin to run until the representation ends." Id. (citation
omitted).

    "[I]n the legal malpractice context, for the continuous
representation doctrine to apply, a predicate of continuing
trust and confidence must exist, and if there is a breakdown
in that relationship, the doctrine is not applicable."
Anderson, 2016 WL 4367960, at *27 (citing De Carlo v. Ratner,
204 F. Supp. 2d 630, 636 (S.D.N.Y. 2002)) (internal quotation
marks and alterations omitted). A plaintiff must establish:
"(1) ongoing representation connected to the specific matter
at issue in the malpractice action, and (2) clear indicia of
an ongoing, continuous, developing and dependent relationship
between the client and the attorney." De Carlo, 204 F. Supp.
2d at 636. When there is a breakdown in the attorney-client
relationship, the doctrine is inapplicable. Id.

    It is clear from the Complaint that the continuous
representation doctrine does not apply in these

circumstances. First, DLA did not have an "ongoing representation connected to the specific matter at issue in the malpractice action." Id. DLA's representation of LKM in the Baliga Action was limited, and, as LKM concedes, was outside of the scope of DLA's engagement. The Complaint further makes clear that after DLA signed the Stipulation on January 21, 2019, it made no other effort to continue representing LKM in connection with Baliga's requested relief. None of the allegations suggest that DLA's representation with respect to the underlying dispute was "ongoing" -- it was nominal at best. LKM thus fails to plead the first prong of the continuous relationship doctrine.

Second, the Complaint also makes clear that there was an erosion of trust and confidence almost immediately after the alleged malpractice was committed, further cementing the doctrine's inapplicability. In moving to withdraw, Schechtman filed a declaration, which LKM attached to its Opposition here, that before and after the Baliga Action was commenced, LKM had failed to pay DLA. (See Opp. Ex. 1 at 5-10.) DLA also advised the Court that LKM had failed to cooperate by not responding to DLA's inquiries "making the representation unreasonably difficult for DLA to carry out [] effectively." (Id. at 6 ¶ 5.) Only days after DLA signed the Stipulation, LKM's then-Chairman of the Board, Vincent Wenyong Shi

("Shi"), "[c]onfirmed" LKM's consent for DLA to withdraw as counsel in the Baliga Action. (Id. at 6 ¶ 6 & Ex. A.) Far from being "ongoing, continuous, developing and dependent," De Carlo, 204 F. Supp. 2d at 636, DLA's representation was effectively over within days of acting on LKM's behalf. Accordingly, no facts alleged in the Complaint support application of the continuous representation doctrine. As such, the limitations period began to run on January 21, 2019, when DLA signed the Stipulation.[5]

As the parties agree that the limitations period for legal malpractice in New York is three years, under normal circumstances, the period would have run out on January 21, 2022, nearly eight months before LKM brought suit. To avoid this, LKM argues that the three-year period was tolled for 228 days pursuant to E.O. 202.8. But even assuming E.O. 202.8 tolls the limitations period for these particular claims (and the Court is not persuaded it does[6]), the additional 228 days'

_____

[5] Counsel for LKM here, who also represents LKM and Shi in the Baliga Action, appears to have conceded that the alleged malpractice occurred on January 21, 2019, having previously taken such a position in a motion to the Court. (See Baliga Action Dkt. No. 214 at 4 (identifying "January 21, 2019" as the date that DLA failed to provide LKM with sufficient advice).)

[6] The parties characterize two opinions from this District regarding the application of E.O. 202.8 to state court claims brought in Federal Courts as at odds with one another. (Compare Mot. at 2 (citing Barry v. Royal Air Maroc, No. 21 Civ. 8481, 2022 WL 3214928, at *4 (S.D.N.Y. Jul. 8, 2022)), with Opp. at 1 (citing Marquez v. Indian Taj, Inc., No. 20 Civ. 5855, 2022 WL 4485948, at *2 (S.D.N.Y. Aug. 5, 2022)).) The Court finds no such conflict insofar as both cases stand for the proposition that E.O. 202.8 applies to "federal cases involving New York state-law statute of limitations." Marquez, 2022 WL 4485948, at *2; see also Barry, 2022 WL

time does not save LKM. Three years and 228 days, running
from January 21, 2019, expired on September 5, 2022, a week
before LKM filed suit.[7] Thus, LKM's claims are untimely.

B.   EQUITABLE TOLLING

LKM also asserts that equitable tolling applies because,
despite multiple requests, the Receiver did not permit LKM to
bring the legal malpractice claims against DLA. Although
raised in its Complaint, LKM did not press the argument
forward in its pre-motion letter opposition. Regardless of
that defect, equitable tolling does not apply here.

"Equitable tolling permits a plaintiff to avoid the bar
of the statute of limitations if despite all due diligence he
is unable to obtain vital information bearing on the existence

---

3214928, at *4 (finding that "EO 202.8 applied to 'any specific time limit
for the commencement, filing, or service of any legal action . . .
prescribed by the legal laws of the *state*") (emphasis in original). But
Barry goes one step further in examining New York State court cases
holding that EO 202.8 "extended limitations periods that would otherwise
have expired *between* March 3 and November 3, 2020, but did not lengthen
periods that expired *after* November 3, 2020." 2022 WL 3214928, at *4
(collecting cases). Marquez does not address this point, nor does LKM. As
the limitations period for this claim ran out on January 21, 2021, i.e.,
after November 3, 2020, the Court is persuaded that EO 202.8 does not
apply.

[7] If the Court were to assume that E.O. 202.8 applied to extend the period
to September 5, 2022, and that LKM's decision to vote and bring this suit
did not violate the Court's Orders, see Note 4, *supra*, LKM had a small
window (between August 25, 2022 and September 5, 2022) to timely bring
these claims. LKM missed that window and offers no excuse for doing so
other than its meritless argument that the continuous representation
doctrine applies. The Complaint mirrors, essentially verbatim, not only
the arguments it made before this Court in seeking to have the statute of
limitation preemptively tolled (see Baliga Action Dkt. No. 211-214 and
discussion, *infra*), but also those in the complaint brought by China AI,
represented by the very same counsel as here.

of his claim." <u>Valdez ex rel. Donely v. United States</u>, 518
F.3d 173, 182 (2d Cir. 2008). "A litigant seeking equitable
tolling bears the burden of establishing two elements: (1)
that he has been pursuing his rights diligently, and (2) that
some extraordinary circumstance stood in his way." <u>Victorial</u>
<u>v. Burge</u>, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (quotation
omitted); <u>see also</u> <u>Boos v. Runyon</u>, 201 F.3d 178, 185 (2d Cir.
2000) ("The burden of demonstrating the appropriateness of
equitable tolling ... lies with the plaintiff.").

For the purposes of this Motion, the Court assumes,
without deciding, that LKM has been pursuing its rights
diligently. The Motion fails on the second prong. There are
at least two theories for what suffices as an extraordinary
obstacle to timely suing. One is the fraudulent concealment
of facts that causes the plaintiff to be "unaware that the
cause of action existed." <u>Meridien Int'l Bank. Ltd. v. Gov't</u>
<u>of the Republic of Liberia</u>, 23 F. Supp. 2d 439, 446 (S.D.N.Y.
1998) (citing <u>Long v. Frank</u>, 22 F.3d 54, 58 (2d Cir. 1994)).
This theory -- also characterized as or very closely related
to equitable estoppel, <u>see</u> <u>Noskov</u>, 2020 WL 4041125, at *7 --
has no application here. <u>Id.</u> ("Equitable estoppel bars
defendants from relying on the statute of limitations as a
defense where 'the *defendant* takes active steps to prevent
[the] plaintiff from suing in time.'") (internal citation

omitted, emphasis added). LKM's allegations are directed at actions taken by the Receiver, who is not a party in this lawsuit. LKM makes no allegations that DLA did anything to prevent LKM from ascertaining the relevant facts or from timely bringing this suit.

The other theory that more closely hews to LKM's allegations is called adverse domination. Adverse domination theory tolls the limitations period "where an action is brought on behalf of an entity which has been defrauded by persons who completely dominated and controlled it." Armstrong v. McAlpin, 699 F.2d 79, 87 (2d Cir. 1983). In other words, it applies where a wrongdoer, dominating the person, made it impossible for that person to timely bring suit.

As a general matter, the Court understands why LKM would appeal to this theory. Yes: the Receiver controlled LKM -- that much was by design. The Receiver Order explicitly granted the Receiver control over the ability to commence new litigation on behalf of LKM. This lawsuit, however, is not the first time the Receiver's authority over commencing new litigation issue had been raised. In fact, Shi raised it in the Baliga Action over two years ago, seeking to have the limitations period equitably tolled due to the Receiver's control and refusal to bring the legal malpractice suit. In March 2021, Shi (not LKM) applied to the Court for

modification of the Receiver Order to allow LKM to engage counsel to bring a malpractice action against DLA. (<u>Baliga</u> Action Dkt. No. 211-214.) Magistrate Judge Freeman denied Shi's request, including because "Shi ha[d] not demonstrated that he ha[d] standing to bring the motion . . . and that Shi ha[d] not demonstrated that a receivership order predicated on allegations that he had personally acted to the detriment of [LKM] should be modified to grant him authority to act on the Company's behalf." (<u>Baliga</u> Action Dkt. No. 274.)[8]

The proverbial mudslinging between Shi and the Receiver regarding who should control LKM undermines the credibility of the claims in the instant suit. Standing alone, the Receiver's decision to not bring the malpractice suit could be characterized as self-interested; doing so would have effectively challenged the Receiver's own authority to act on behalf of LKM. But Shi's reasons for doing so fare no better. His reasons were, and continue to be, predicated on regaining control of LKM and avoiding being held personally liable for the Receiver's costs (another point of dispute in the <u>Baliga</u> Action). The Court also cannot ignore the underlying

---

[8] That same day, in her Report and Recommendation later adopted by the Court over objections, Magistrate Judge Freeman found that Shi should "be reinstated to his prior positions of Chairman of the Board and Chief Operation Officer of [LKM]," that the Court had subject matter jurisdiction to enter the Receiver Order despite Baliga's defective pleadings, and that none of the Receiver's actions need be unwound. (<u>Baliga</u> Action Dkt. No. 275.)

allegations, untested as of yet, that Shi defrauded LKM for his own personal gain.

Much ink has been spilt on these disagreements. In fact, a multitude of the papers filed in the three related suits[9] involve not the underlying merits of Baliga's claims, which have been stalled for over four years, but rather the internecine battles between Shi and the Receiver over who should control LKM. Shi's crusade to vindicate his interests through counsel has been consistent. And the overlapping nature of legal representation as between LKM, Shi, and China AI raises the specter that Shi has been the one pulling the strings all along -- a potential conflict that DLA raises in its Motion. The divergent interests as between Shi and the Receiver on behalf of LKM remain irreconcilable. And so, whether it was appropriate for the Receiver to decline to bring the legal malpractice action on behalf of LKM, despite the potential for self-interest, goes, essentially, to the merits question underlying this action: was appointment of the Receiver proper despite the purported deficiencies in Baliga's original complaint? This Court has, time and time again, answered that question "yes."

---

[9] Those suits are (1) the Baliga Action; (2) China AI Capital Ltd. v. DLA Piper LLP (US), 21 Civ. 10911 (VM); and (3) the instant action.

This commentary aside, there appears little legal basis to expand the doctrine of "adverse domination" to third-parties not named in the instant lawsuit. Precedent establishes that "the statute is tolled *as to the controlling wrongdoers* during the period of their domination and control" -- not to anyone else. <u>Armstrong</u>, 699 F.2d at 87 (emphasis added); <u>see</u> <u>also</u> <u>Sousa v. BP Oil, Inc.</u>, No. 83 Civ. 4046, 1995 WL 842003, at *9-10 (D. Mass. Sept. 12, 1995) ("It appears clear the doctrine is inapplicable in an action other than one against a person 'dominating' the corporation.").[10] In other words, adverse domination theory is ineffective where the dominating person is a nonparty.

Finally, even if adverse domination theory applied to the Receiver's actions, the Court is not persuaded that the Receiver's decision to not bring the lawsuit amounts to the type of fraudulent "wrongdoing" for which the theory purports to apply. As the Receiver was charged with acting in LKM's best interest, any purported wrongdoing by refusing to bring the action amounts only to a quarrel over a difference in

---

[10] To the extent that the court in <u>Meridien Int'l Bank Ltd.</u> found <u>Sousa</u>'s statement of the law unavailing, 23 F. Supp. 2d at 448 n.5, the Court finds that proposition of no moment here. In <u>Meridien</u>, the party against which the adverse domination theory was raised was only a third party to the corporation dominated, not to the lawsuit itself. <u>Id.</u> at 448 (finding that "plaintiff as a third party effectively dominated and controlled [Defendants]" through bribes). That third party was, however, a party to the lawsuit.

opinion as to the appropriateness of the claims. No equitable theory operates to toll the statute of limitations.[11] Accordingly, LKM's suit is time-barred and must be dismissed, with prejudice.

## IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Dkt. No. 7) of defendant DLA Piper LLP (US) and Caryn Schechtman (together, "DLA") to dismiss the complaint of plaintiff Link Motion Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** with prejudice. The Clerk of the Court is respectfully directed to close this action.

**SO ORDERED.**

Dated:    26 May 2023
          New York, New York

_____
              Victor Marrero
                U.S.D.J.

---

[11] The Court would be remiss to fail to note that a suit seeking to vindicate LKM's rights was timely brought, albeit derivatively, by China AI. That suit was voluntarily dismissed by China AI, which is represented by LKM's counsel here, in favor of this suit directly after the LKM Board voted to bring it.