```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/20/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------

LINK MOTION INC.,

                Plaintiff,

    - against -

DLA PIPER LLP (US) and CARYN G. SCHECHTMAN,

                Defendants.

---------------------------------------

**22 Civ. 8313 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

Link Motion Inc. ("LKM") moves pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e), 60(a), and 60(b) for reconsideration (see Dkt. No. 32; "Motion" or "Mot.," Dkt. No. 34) of this Court's May 26, 2023 Decision and Order granting DLA Piper LLP (US) and Caryn G. Schechtman's (together "DLA") motion to dismiss. (See "D&O," Dkt. No. 30); see also Link Motion Inc. v. DLA Piper LLP (US), No. 22 Civ. 8313 (VM), 2023 WL 3687731 (S.D.N.Y. May 26, 2023). For the following reasons, LKM's Motion is **DENIED**.

                **I.   LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3 are "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31,

1

2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). When assessing a motion for reconsideration, a district court must "narrowly construe and apply" Local Rule 6.3 to "avoid duplicative rulings on previously considered issues" and to prevent the rule from being used to advance theories not previously argued or as "a substitute for appealing a final judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); see also Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

2

error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257; see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (noting that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

Finally, the decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (quoting Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986)).

## II.  DISCUSSION[1]

The D&O granting DLA's motion to dismiss was based solely the three-year statute of limitations applicable to legal malpractice claims in New York. See Link Motion Inc., 2023 WL 3687731, at *4. LKM's claims were not timely brought based on

---

[1] The Court assumes familiarity with the facts of this case and refers to and incorporates by reference its recitation of the facts set forth in the D&O. See Link Motion Inc., 2023 WL 3687731, at *1-2.

3

four considerations. First, the Court found that the claims accrued on January 21, 2019, when the alleged malpractice occurred, as is proper under New York law. Id. Second, the Court concluded that the so-called continuous representation doctrine did not apply because LKM's Complaint failed to establish "a predicate of continuing trust and confidence" between LKM and DLA. Id. at *5. Third, the Court decided that "even assuming [New York Executive Order] 202.8 tolls the limitations period for [LKM's] particular claims . . . the additional 228 days' time [would] not save LKM," because the limitations period, running from January 21, 2019, would have "expired on September 5, 2022, a week before LKM filed suit." Id. Fourth, the Court found that no theory of equitable tolling applied, including because the so-called adverse domination theory "is ineffective where the dominating person is a nonparty" to the action. Id. at *7.

LKM attacks each of the four grounds on which the Court's decision was based, positing that in reaching those conclusions that Court "overlooked controlling New York decisional law regarding the doctrines of continuous representation before a tribunal and equitable estoppel and the tolling of statutes of limitations under New York

4

Executive Orders."[2] (Mot. at 1.) The Court has reviewed these decisions and the arguments offered by LKM. LKM's Motion inappropriately relitigates issues already decided and offers no new controlling law or evidence. See Shrader, 70 F.3d at 257. None of LKM's arguments warrant the Court's deployment of the "extraordinary remedy" reconsideration is supposed to be.[3] In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d at 614.

    A.    DLA'S REPRESENTATION OF LKM

LKM argues that the Court overlooked New York decisional law regarding the scope of DLA's representation, which the Court characterized as "nominal." (Mot. at 3.) To the extent that New York law would find that DLA's representation was more fulsome than the Court previously described in the D&O,

---

[2] LKM also requests that the Court modify its statement in footnote 11 of the D&O regarding the legal malpractice lawsuit brought by a registered shareholder of LKM, China AI Capital Ltd. ("China AI"), stating that the action "has not been dismissed and is still pending." (Mot. at 1.) Footnote 11 states the related lawsuit "was voluntarily dismissed by China AI." That statement is accurate. China AI filed a notice of voluntary dismissal of the action. See China AI v. DLA Piper LLP (US), No. 21 Civ. 10911, Dkt. No. 23. Insofar as the footnote needs further elucidation, the Court clarifies that the acceptance of the voluntary dismissal remains in limbo pending court approval of notice to shareholders, as required under Federal Rule of Civil Procedure 23.1(c). That issue, as well as a motion for sanctions under Federal Rule of Civil Procedure 11 against China AI -- represented by the same counsel here -- are unresolved. So, indeed, that case remains open.

[3] The Court also notes that, far from being used "sparingly," counsel for LKM has drained "scarce judicial resources" by moving for reconsideration two other times within the past year, once in this action (see Dkt. Nos. 25, 27 (denying reconsideration)) and once in the action underlying the malpractice claims (see Baliga v. Link Motion, Inc., No. 18 Civ. 11642 (VM), Dkt. Nos. 361, 364 (denying reconsideration)), approaching the boundaries where zealous advocacy transgresses procedural abuse.

the Court's findings on this issue are subordinate to its conclusion that the continuous representation doctrine is inapplicable. That finding, not the scope of DLA's representation, was the crux of the Court's D&O.

Regarding the continuous representation doctrine, LKM argues that although DLA "filed no other papers" between January 21, 2019, when the stipulation forming the basis of their malpractice claim was signed by DLA, and March 1, 2019, when DLA was granted leave to withdraw, DLA continued to represent LKM in the proceedings. (Mot. at 4.) In the alternative, LKM states that, at the earliest, the proper date of accrual is February 4, 2019, when DLA gave notice to LKM that it would seek to withdraw. (Id.)

To support its argument that the legal malpractice limitations period does not begin to run "until 'the client is informed or otherwise put on notice of the attorney's *withdrawal* from representation,'" (Mot. at 5 (emphasis in original, quotation omitted)), LKM relies primarily on three New York state cases, Shumsky v. Eisenstein, 96 N.Y.2d 164 (N.Y. 2001), Deutsch v. Polly N. Passonneau, P.C., 297 A.D.2d 571 (N.Y. App. Div. 2002), and Deep v. Boies, 16 Misc.3d 1121(A) (N.Y. Sup. Ct. Albany Cty. 2007). Far from undermining the Court's finding that the continuous representation

6

doctrine does not apply, these three cases bolster the Court's conclusion.

In Shumsky, the New York Court of Appeals found that "'continuous representation' in the context of a legal malpractice action does not automatically come to an end where, as here, pursuant to a retainer agreement, an attorney and client both explicitly anticipate continued representation." 96 N.Y.2d at 170. That finding was premised on the client having "retained [the defendant attorney] for the sole purpose of pursuing their specific contract claim" and that the retainer agreement evinced mutual intent that "their professional relationship of trust and confidence -- focused entirely upon the very matter in which the alleged malpractice was committed -- would continue." Id.

As articulated in the D&O, LKM's relationship with DLA was not focused on the underlying lawsuit on which the malpractice suit is premised. The Complaint makes clear that LKM "engaged Defendant DLA to represent the Company in connection with the issuance of Class B shares to an investor," not to defend it from the securities fraud allegations. ("Compl." Dkt. No. 1-1 ¶ 12.) There are no allegations that LKM retained DLA for the specific subject matter at issue, and so because Shumsky is factually distinguishable, its rule does not apply.

7

Shumsky's distinctions are also illustrative of why the Court's initial conclusion was correct and in accord with New York law. By analogy to medical malpractice, in Shumsky, the New York Court of Appeals described how a continuing relationship of trust would be found, even after a complete discharge of the patient, where the patient schedules a "timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment." 96 N.Y.2d at 170. Shumsky's rule envisions that the client returns to the professional and continues to seek advice and counsel regarding the underlying issues. In those types of relationships, the continuous representation doctrine applies. But there is nothing in the Complaint here indicating any substantive communications about the case between DLA and LKM after DLA's email on January 19, 2019, where DLA advised LKM that "if we do not hear back from you within 24 hours, DLA will *assume* that we have Link Motion's consent not to oppose the motion." (Compl. ¶ 51 (emphasis in original).) The Complaint is devoid of allegations that there were any communications "instigated" by LKM. There are no allegations suggesting that LKM ever even responded to DLA's inquiries at any time during the representation other than Vincent Shi's response to DLA's February 4 email notice of

8

its intent to withdraw. Shi's response then was one word: "Confirmed." (See Dkt. No. 11, Ex. 1 at ECF No. 9.)

LKM's reliance on Deutsch fares no better. In Deutsch, the New York Appellate Division found the date of accrual for the malpractice claim was the date of judgment, more than a year after the court found the "parties had clearly lost trust and confidence in one another." 297 A.D.2d at 572. The Court's decision, however, was based solely on the court having "compelled [the parties] to continue their attorney-client relationship for purposes of 'winding up' the matter, and plaintiff could not be reasonably expected to sue defendant for malpractice until such winding up had occurred." Id. No facts alleged in the Complaint are remotely analogous to those in Deutsch.

Deep, an unreported Albany County Supreme Court case, also provides no support for LKM. There, the defendant law firm argued that the "relationship of mutual trust and confidence came to an end no later than . . . the date on which they moved to withdraw." 16 Misc.3d 1121(A), at *7-8 (holding that "plaintiff is unable to satisfy the requirements of the continuous representation doctrine"). The court accepted that argument and found that the date of withdrawal was the proper date by which to assess continued representation. But DLA does not make that argument here.

9

Their position is that the date of accrual is January 21, 2019, not the date they noticed their withdrawal. Although LKM says that the Complaint "makes clear that [LKM] continued to place its trust and confidence in [DLA] until at least February 4, 2019," LKM provides no citation to any allegation in the Complaint supporting that statement. And the Court finds none. As articulated in the D&O, DLA's reason for withdrawing was based upon LKM's failure to pay DLA "*prior* to the filing" of the underlying lawsuit and LKM's "fail[ure] to cooperate in the representation by failing to respond to inquiries, thus making the representation unreasonably difficult." (Dkt. No. 11 at ECF 5-6 (emphasis added).) These considerations clearly establish that the trust between attorney and client eroded well before February 4, 2019.

As a matter of law, LKM gets the benefit of a date of accrual beyond the date the malpractice occurred, such as to the date of withdrawal, only if the Complaint adequately establishes the predicate requirement of an ongoing relationship of trust and confidence. See Link Motion, 2023 WL 3687731, at *5. The Court's conclusions in the D&O are in full accord with New York law on this point. See Shumsky, 96 N.Y.2d at 167. There is nothing for the Court to reconsider: the date of accrual of LKM's claims against DLA was January

10

21, 2019 and no later. Three years from that date occurred well before LKM filed suit.

B. EXECUTIVE ORDER 202.8

Because the date of accrual is January 21, 2019, there is no need for the Court to revisit its findings regarding the application of New York Executive Order 202.8 ("E.O. 202.8"). As the Court assessed in the D&O, assuming E.O. 202.8 applied, the additional 228 days would extend the limitations period from January 21, 2022 to only September 5, 2022, a week before LKM filed suit. Thus, even if the Court's discussion of its views on E.O. 202.8's application was incorrect and the Court reversed course now, doing so would not help LKM. LKM first needs a date of accrual beyond January 27, 2019 as well as the additional 228 days potentially provided by E.O. 202.8 for their math to work. But there is no basis in law or fact to establish a date of accrual later than January 21, 2019.

C. ADVERSE DOMINATION

LKM argues that the Court misapplied New York law regarding equitable estoppel, arguing that the Court's supposed reliance on a District of Massachusetts decision, Sousa v. BP Oil, Inc., No. 83 Civ. 4046, 1995 WL 842003 (D. Mass. Sept. 12, 1995), was inappropriate insofar as it does

11

not apply New York law and is not binding precedent.[4] But the rule in Sousa, that "the doctrine is inapplicable in an action other than the one against a person 'dominating' the corporation," accords with the law of this Circuit. 1995 WL 842003, at *9.

LKM contends that "[t]here is no legal or equitable support for the idea that equitable tolling cannot apply solely because the dominating person is a nonparty." (Mot. at 10.) For that proposition, LKM cites footnote five of Meridien International Bank v. Government of the Republic of Liberia, 23 F. Supp. 2d 439 (S.D.N.Y. 1998). Footnote five of Meridien Int'l Bank distinguishes Sousa, but it does not stand for the proposition that nonparties to lawsuits can be used to toll the limitations period to the actually named defendants. As discussed in the D&O, the court's somewhat ambiguous reference to a "third party" in Meridien Int'l Bank did not refer to a nonparty to the lawsuit. Link Motion Inc., 2023 WL 3687731, at *7 n.10. The "third party" was Meridien International Bank ("Meridien"), the plaintiff/counter-claim defendant in the action. Meridien Int'l Bank, 23 F. Supp. at 448. The court made clear that Meridien was not part of or in

---

[4] To the extent that LKM indicates the Court failed to apply New York law on this theory, LKM cites no additional cases other than those already reviewed and applied by the Court in the D&O.

12

control of the entity alleged to have been dominated, there the Government of Liberia ("GOL") and state-owned Liberia Telecommunications Corporation ("LTC"). Id. But Meridien had bribed "high officials" in the GOL and LTC, allowing them to "effectively dominate[] and control[]" those entities. Id. It was only after a new government took over that the "new officials w[ere] able to discover the evidence of Meridien's wrongdoings." Id. at 445. The Court, distinguishing Sousa, found that by paying bribes to get its way, Meridien was not "passive[ly] complicit[]" in dominating GOL and LTC, and so the adverse domination theory applied. Id. at 448 n.5.

None of the findings or conclusions in Meridien Int'l Bank support the notion that adverse domination applies in a suit where the purported dominating actor is a nonparty. The plain language of the Second Circuit makes that clear. In Armstrong v. McAlpin, the Second Circuit stated that "the statute of limitations is tolled *as to the controlling wrongdoers* during the period of their domination and control." 699 F.2d 79, 87 (2d Cir. 1983) (emphasis added). In other words, the limitations is not tolled as to anyone else but the controlling wrongdoer. Here, the alleged controlling wrongdoer is not DLA, it is the court-appointed receiver, Robert W. Seiden (the "Receiver"). The Receiver is not named and is not a party in this action, nor would it make sense

13

for him to be. The Court finds no support in any federal court or the courts of New York -- and LKM cites none -- for the proposition that adverse domination tolls the limitations period where the controlling wrongdoer is a nonparty. The Court declines to expand the doctrine further.

The Court also rejects LKM's argument that DLA was "more than 'passive[ly] complicit[]'" in the Receiver's alleged domination by making "affirmative representations to the Court by signing and filing a stipulation without the authority or consent of their client." (Mot. at 10.) Those actions, although perhaps one of the catalysts leading to the Receiver's control of LKM, have little to do with the actions the Receiver later took in declining to bring the malpractice suit. Such an expansive view of the doctrine could lead to absurd results. For example, the Court also was as much as a catalyst as DLA for the Receiver's control of LKM, but it would be beyond the pale to suggest that the Court's orders made it actively complicit in the Receiver's alleged activities. None of the supposedly new evidence that the remainder of LKM's Motion focuses on for this point supports the notion that DLA had anything to do with the Receiver's actions. The facts here are far afield from the bribes paid in <u>Meridien Int'l Bank</u> that supported that court's conclusion.

14

The Court again declines to reconsider its conclusions in the D&O and reaffirms that the adverse domination theory does not toll the limitations period here. As the adverse domination theory does not apply, the Court does not need to consider the additional evidence -- which is the subject of substantial dispute in the related proceedings -- offered by LKM of the Receiver's alleged domination. (<u>See</u> Mot. 10-11.)

Finally, the Court declines LKM's dual requests to (1) allow LKM's claim to "relate back to the date of filing of the China AI derivative case," a request for which they provide no legal authority, or, alternatively, (2) revise the D&O to dismiss the action without prejudice. (<u>See</u> Mot. at 12.) The Court's original ruling in this matter stands, unaltered.

## III. <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the motion by Link Motion Inc. for reconsideration of the Court's May 26, 2023 Decision and Order (Dkt. No. 32) is **DENIED.**

**SO ORDERED.**

Dated:    20 June 2023
          New York, New York

_____
Victor Marrero
U.S.D.J.